[L. A. No. 568.   Department One.—September 15, 1899.]

GREGORY PERKINS, Jr., as Receiver of the Estate of A. M. Mealey & Co., Insolvents, Appellant, y. C. W. METTLER, Respondent.

CONDITIONAL SALE OF MERCHANDISE—INTENTION OF PARTIES.—In determining whether a contract for the sale of a stock of merchandise is absolute or conditional, the intention of the parties, as disclosed by the whole contract, should govern; and, where their intention is clearly apparent to make the sale conditional upon payment of the purchase price, it will be so construed.

ID.—EXECUTORY CONTRACT—RETENTION OF TITLE OF GOODS DELIV-
ERED—RESALE UPON CONDITION BROKEN.—Although the stock of
merchandise is immediately delivered to the vendee, yet if the
contract of sale is executory in its terms, and the price is to be
paid in future instalments, and a bill of sale and "absolute pos-
session" are to be delivered when the price is fully paid, and it
is expressly agreed that the title to all of the property is to be
retained by the vendor until fully paid for, and that the vendee
shall keep the property insured at his expense in the name of
the vendor, and that upon default of payment the vendor may
retake possession and resell the property at auction, the sale is
conditional and not absolute.

ID.—RETURN OF EXCESS UPON RESALE.—The provision for a return
to the vendee of any amount obtained at public sale in excess of
the expenses of sale and of the amount of unpaid purchase
money is not necessarily inconsistent with a conditional sale.

ID.—ABSOLUTE PROMISE TO PAY.—The fact that the promise of the
vendee to pay the purchase money is absolute, though a circum-
stance to be considered in determining the nature of the con-
tract, is not of itself a determining characteristic, and is not
conclusive that the sale was absolute, nor inconsistent with its
conditional character established by other considerations.

APPEAL from an order of the Superior Court of San Ber-
nardino County denying a new trial. John L. Campbell, Judge.

The facts are stated in the opinion.

Dillon & Dunning, and Curtis & Curtis, for Appellant.

The transaction is in the nature of a chattel mortgage with a
provision for foreclosure, and is invalid under the law. (*Palmer
v. Howard*, 72 Cal. 293; 1 Am. St. Rep. 60; *Stockton Sav. etc.
Soc. v. Purvis*, 112 Cal. 236-41; 53 Am. St. Rep. 210.) The
agreement to buy and pay the purchase price was absolute.
(*Palmer v. Howard, supra; Rodgers v. Bachman*, 109 Cal. 557.)

E. R. Annable, Leonard & Morris, and H. Goodell, for Re-
spondent.

The conditional contract of sale between Mealey & Co. and
the defendant was properly rescinded upon default of Mealey
& Co., as to the goods sold, and the repossession by defendant
was not void under the Insolvent Act. No error appears in
the record.

GRAY, C.—The above parties named as insolvents and the

defendant Mettler entered into a written agreement, of which the following is a copy:

"This agreement, between C. W. Mettler, as vendor, and A. M. Mealey and Mrs. C. W. Stetson, partners under the firm name of A. M. Mealey & Co., as vendees, witnesseth:

"The vendor agrees to sell to the vendees, and they agree to buy from him, all that certain stock of merchandise, including a general assortment of hardware, belonging to the vendor and now in and about the branch store heretofore maintained by the vendor at Colton, together with all furniture and fixtures belonging to the vendor and now in said store.

"The price to be paid by the vendees to the vendor for all said property is three thousand seven hundred and ninety-two and eighty-two one-hundredths dollars, in gold coin of the United States, to be paid in instalments as follows: There shall be paid during each year, beginning on the twenty-eighth day of January, 1896, the sum of one thousand ($1,000) dollars, with interest on such one thousand ($1,000) dollars from said date until paid at the rate of ten per cent per annum, which one thousand ($1,000) dollars shall be paid during each year in quarterly instalments, with interest as aforesaid on each quarterly instalment from said date until paid, the first three quarterly instalments in each year to be two hundred ($200) dollars each, and the fourth to be four hundred ($400) dollars, with interest on each as aforesaid. The vendees, at their option, may pay all or any of such instalments at any time before maturity.

"Upon the completion of the payment of the purchase price as aforesaid, the vendor will execute to the vendee a good and sufficient bill of sale of all of said property, or of so much thereof as shall then remain, and deliver to them the absolute possession thereof.

"The vendor retains the title to all said property until the purchase price shall be fully paid.

"The vendees shall take immediate possession of all said property, and, so long as they comply with the provisions hereof, they may retain such possession, and may, at their own cost and risk, conduct the business of said store, and may sell any of said property in the usual course of business; provided, that

they shall, from time to time, upon their own account and risk, purchase other goods in lieu of those sold, so as to maintain the stock in said store of substantially the same value as at present, and all goods so purchased by them shall be regarded as taking the place of goods sold by them, and, when placed in said store, shall become the property of the vendor and be subject to this contract.

"The vendees shall pay all taxes and assessments levied upon said property during the continuance of this contract.

"During the continuance of this contract, all said property shall be kept insured at the expense of the vendees, but in the name of the vendor as owner, to the extent of its fair insurable value; and, in case of loss, the insurance shall be retained by the vendor to the extent of the balance then unpaid under this contract, and the surplus, if any, shall be paid to the vendees.

"All said property shall be at the risk of the vendees so long as the vendor is not in possession thereof, and no loss thereof or damage thereto, while not in the possession of the vendor, shall relieve them from the payment of any part of said purchase price.

"If the vendees fail to pay any tax or assessment upon said property when due, or fail to pay for any insurance thereon when due, then the vendor, at his option, may pay the same, and in that case the amount of any such payment, with interest thereon at ten (10 per cent) per cent per annum from time of payment, shall be added to the next quarterly instalment thereafter becoming due, and shall be repaid to the vendor by the vendees with such quarterly instalment.

"If the vendees fail to make any payment herein provided for within ten days after it shall become due, or fail to comply with the requirements hereof in any respect, or shall suspend the business of said store, then, at any time thereafter, during the continuance of such default or failure or suspension, the vendor may take possession of all said property, and sell the same at public auction in the manner in which sales of like property are made under execution, and after giving like notice as is required by law for sales under execution, and the proceeds of such sale shall be applied first to the payment of

the expenses thereof, secondly, to the payment to the vendor of the balance then unpaid under this contract, and the surplus, if any, shall be paid to the vendees. At such sale any of the parties hereto may be purchasers.

"In witness whereof the parties hereto set their hands, in duplicate, this twenty-eighth of January, 1896.

> "MRS. C. W. STETSON.
> "A. M. MEALEY & CO.
> "C. W. METTLER."

On the twenty-eighth day of June, 1897, the parties to the above contract entered into another contract wherein they recited that the purchase price mentioned in the first contract not having been paid, and the other conditions of the contract not having been performed, they mutually released each other from the further performance of said first contract, and that the goods mentioned in the first contract were delivered up and the book accounts that had accrued in the mercantile business carried on under said contract by Mealey & Co. were assigned to said Mettler. Within thirty days after the execution of this second contract and the return of the property to Mettler, the creditors of A. M. Mealey & Co. filed a petition against that firm in involuntary insolvency, and the plaintiff was appointed receiver therein. The plaintiff soon thereafter commenced this action for the recovery of the value of the property hereinbefore mentioned, which was claimed in the complaint to be three thousand seven hundred dollars. The case was tried with a jury, the plaintiff had a verdict and judgment for one hundred and seventy-five dollars, and from an order refusing him a new trial the plaintiff appealed. The only errors relied on by appellant are that the court erred in refusing to give the instruction requested by plaintiff numbered 8, and in giving the instruction No. 7, requested by defendant. Instruction No. 8 reads as follows:

"It is the province of the court to construe and interpret the contract, exhibit A, in evidence between A. M. Mealey & Co. and the defendant, and the court instructs you that said contract operated to vest the title to the property therein mentioned in A. M. Mealey & Co.; notwithstanding any terms in said writing to the contrary. And the only interest that de-

fendant had therein was one of lien or security for the indebt-
edness owing to him thereunder, and the court instructs you
that such lien was what the law denominates a secret lien and
was fraudulent and void as against the creditors of A. M. Mealey
& Co., and also against their assignee in insolvency."

The instruction given, No. 7, reads as follows: "If you should
find for the plaintiff in this action, then, in estimating the
amount of damages to which he will be entitled by your ver-
dict, you should exclude so much of the property which was
received from the defendant on January 28, 1896, as has been
shown remained of the original stock on June 28, 1897."

It is conceded by appellant that the correctness or incorrect-
ness of the court's action in reference to these instructions de-
pends upon the interpretation of the contract, a copy of which
is above set out, and his opening brief is confined to that propo-
sition entirely. His position is, that the contract in question
"was an attempt to circumvent the chattel mortgage statute in
the guise of a conditional sale reserving title in the vendor,"
and that it had the effect to convey to the vendee named in it
the entire ownership of the property. The trial court must
have been of the opinion, on the other hand, that the written
agreement evidenced a conditional sale, with the ownership of
the property in the vendor until performance of conditions.

From a thorough consideration of the whole contract we are
constrained to agree with the trial court. The intention of
the parties, as disclosed by the whole contract, should govern the
court in determining whether the sale was absolute or condi-
tional. (*Van Allen v. Francis,* 123 Cal. 474.) It seems plainly
apparent that if the construction is given to the contract that
the parties to it intended it should receive and that they gave
to it themselves, it will be treated as a conditional sale. To
begin with, the vendor "agrees to sell" and the vendees "agree
to buy"; this is not the language of a present executed sale.
The price is to be paid in future instalments. A bill of sale
is to be made and "absolute possession" is to be delivered in
the future. (*Kohler v. Hayes,* 41 Cal. 455; *Hegler v. Eddy,* 53
Cal. 597.) Express agreements are made that title to all said
property shall remain in the vendor, and that the vendee shall
at his own expense keep the property insured in the name of

the vendor. No stronger words than these could be used to indicate a purpose that the vendor should remain the owner of the property. (*Rodgers v. Bachman*, 109 Cal. 552.) In the case last cited the contract, therein held to be a conditional sale, was similar in its terms to the contract herein considered. It contained the clause for a resale of the property on condition broken, and a return to the vendee of any amount obtained on such sale in excess of the amount due the vendee under the original contract of sale. It is true that the contract here contains an agreement on the part of the vendee to buy and pay for the goods, and there was an entire absence of any agreement of that kind in *Rodgers v. Bachman*, *supra*, and the two contracts are in that respect different in their terms, but this difference does not necessarily lead to a difference of construction. This is shown by the following quotation from the later case of *Van Allen v. Francis*, *supra*, to wit: "Nor can appellants' further contention be sustained, namely, that the fact that Langton's promise to pay is absolute is determinative and conclusive that the sale itself was absolute. In *Palmer v. Howard*, 72 Cal. 293, 1 Am. St. Rep. 60, a like circumstance is mentioned but not discussed. In *Rodgers v. Bachman*, *supra*, the same fact is adverted to, but, while such a matter may be a circumstance in determining the nature of the contract, it is a circumstance and nothing more. It never has been held to be a determinative characteristic, and it cannot be so held without undoing all the law upon the question. There can be no sale at all without an agreement, express or implied, to pay. Lacking such a promise, the contract is a mere option. . . . . In truth the purchaser's promise is usually an absolute promise."

In *Harkness v. Russell*, 118 U. S. 663, the agreement to pay for the property was absolute, and yet the transaction was held to be a conditional sale.

The provisions of the contract here under consideration are not identical with those in *Palmer v. Howard*, *supra*, for in that case there was no agreement for a future bill of sale, nor was there any agreement for a delivery of absolute possession of the property upon the completion of the payment of the purchase price. Such provisions as the above are material and

are to be considered in construing the contract. (*Kohler v. Hayes, supra.*) The court, in *Palmer v. Howard, supra,* based the conclusion that the intention was to vest the substantial ownership in the vendee upon the clause in the contract providing for a resale on condition broken, and a return to the vendee of any surplus obtained on such resale; but the later case of *Rodgers v. Bachman, supra,* is an authority to the effect that such a stipulation is not absolutely determinative of the character of the contract.

We are satisfied with the construction placed upon the contract by the court below and advise that the order appealed from be affirmed.

Chipman, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion, the order appealed from is affirmed.

Van Dyke, J., Harrison, J., Garoutte, J.

Hearing in Bank denied.