[Civ. No. 1748.  Third Appellate District.—October 31, 1917.]

## H. E. BRADLEY, Appellant, v. ROLAND McDONALD et al., Respondents.

CLAIM AND DELIVERY—RECOVERY OF BAR FIXTURES—SALE UNDER CONDITIONAL CONTRACT—PAYMENT—FINDING SUPPORTED BY EVIDENCE.—In this action in claim and delivery to recover certain bar fixtures sold by plaintiff's assignor under a conditional sale contract, and purchased by the defendant at a trustee's sale in the matter of the estate of the bankrupt vendee, it is held that the finding that such vendee had fully paid the money required of him under the terms of such contract is supported by the evidence.

ID.—JUDGMENT—ALTERNATIVE PROVISION—WHEN UNNECESSARY.—In an action in claim and delivery the plaintiff cannot complain that the judgment in favor of the defendant omits the alternative provision for a money judgment in case delivery cannot be made, where it is found that title and possession are in the defendant.

APPEAL from a judgment of the Superior Court of Kern County.  Howard A. Peairs, Judge.

The facts are stated in the opinion of the court.

Henry K. Norton, and Wilbur Bassett, for Appellant.

E. L. Foster, and Charles A. Barnhart, for Respondents.

CHIPMAN, P. J.—Plaintiff brings the action in claim and delivery as the assignee of the Brunswick-Balke-Collender Company, hereinafter referred to as the Collender Company. It is alleged in the complaint that on the tenth day of March, 1912, the Collender Company was and ever since until the seventeenth day of January, 1913, has been the owner and entitled to the immediate possession of certain saloon fixtures, the articles referred to being embraced in what is designated in the record as the first contract, and that the said Collender Company was on the said seventeenth day of January, 1913, the owner and entitled to the immediate possession of four booths with four mahogany tables referred to in the record as embraced in what is termed the second contract of sale, and that on the said seventeenth day of January, 1913, said company transferred and assigned all its right, title, and interest in and to said goods and chattels to the plaintiff, who thereupon became and ever since has been, and is now, the owner and entitled to the possession of the said goods and chattels, all of which are alleged to be of the value of two thousand dollars. That the defendants McDonald and Allen, "without the consent of the plaintiff and against his will, now detain the said goods and chattels from the possession of said plaintiff." It is also alleged "that the said goods and chattels are now in the actual possession of defendant L. Allen, but that plaintiff is informed and believes, and on such information and belief so alleges the fact to be, that defendant L. Allen is the agent for defendant McDonald and has been at all times and is now acting under instructions from said defendant McDonald in this matter." Alleges that on said seventeenth day of January, 1913, and before the commencement of this action, plaintiff demanded of defendants, and each of them, possession of said goods and possession was refused, and that defendants, and each of them, still unlawfully withhold and detain the said goods and chattels to the damage of plaintiff in the sum of two thousand dollars.

A general demurrer was overruled and defendants answered; denied on information and belief that the Collender Company was the owner of said goods as alleged in the com-

plaint, and denied that it had transferred and assigned its right in the said goods to the plaintiff and that the plaintiff is the owner and entitled to the immediate possession of the same; alleged that the said property was of no greater value than one thousand dollars; denied that the defendants detained said goods otherwise than as hereinafter set forth; denied that the said defendant Allen is the agent of defendant McDonald or is acting under his instructions in any manner or at all; denied that they unlawfully withhold and detain said goods from the possession of plaintiff to his damage as alleged.

For separate answer and defense, the defendants allege that the property described in the plaintiff's complaint was part of the estate of F. M. Carrillo, a bankrupt, and that the trustee in bankruptcy, under and by virtue of an order of the referee in bankruptcy in and for the county of Kern, sold at public sale all the right, title, and interest of the bankrupt, F. M. Carrillo, to the defendant, L. Allen, and that the latter is now the owner of all the right, title, and interest of F. M. Carrillo, a bankrupt as aforesaid, and that said Carrillo was declared a bankrupt by the United States district court, in and for the southern district of California, northern division, on or about the twenty-fifth day of May, 1912. That said Collender Company sold the said goods and chattels to said Carrillo, and that he had paid large sums of money on account of the purchase thereof, and that the said Collender Company had failed to give credit for the full amount paid thereon by said Carrillo, and that these defendants have demanded of said Collender Company that they give proper credit for payments made, and stated that when such amount was ascertained, the defendant Allen would pay the said Collender Company the correct amount. Allege that defendant Allen is willing, ready, and able to pay the correct balance due thereon.

The cause was tried by the court, a jury having been expressly waived, and the court made the following findings: That it was stipulated that plaintiff was simply the assignee of the Collender Company for the purpose of this suit, "and that all defenses raised by the defendants were applicable in this action against the plaintiff." That the property described in plaintiff's complaint was sold to Carrillo under two contracts of sale, the first being for certain bar fixtures

and the second for four booths and four mahogany tables. That the first contract or agreement for sale of property referred to therein "had been fully paid by F. M. Carrillo, and that nothing was due thereon." That it was stipulated by the respective parties that the value of all the personal property was one thousand dollars. That the property described in plaintiff's complaint was part of the estate of F. M. Carrillo, a bankrupt, "and that the trustee in bankruptcy, J. W. McGrath, the duly appointed, qualified, and acting trustee in bankruptcy for the said estate, under and by virtue of an order of the referee in bankruptcy in and for the county of Kern, state of California, sold at public sale, all the right, title, and interest of the bankrupt, F. M. Carrillo, to the defendant, L. Allen, and that the defendant, L. Allen, was the owner of all the right, title, and interest of F. M. Carrillo, a bankrupt, and that the said F. M. Carrillo was declared a bankrupt . . . on or about May 25, 1912." That the defendants do not detain the goods and chattels from the possession of the plaintiff mentioned in the first contract; that the said goods and chattels referred to in the second contract "are in the actual possession of the defendant, L. Allen, and that L. Allen is not the agent of defendant Roland McDonald, nor is he acting under instructions from the said defendant McDonald in this matter"; that before the commencement of this action, plaintiff demanded of the defendants at the time and as alleged in the complaint the possession of said goods and chattels, and defendants refused, and still refuse, to deliver the same to plaintiff; that on the seventeenth day of January, 1913, the Collender Company assigned, for the purposes of this action, all its right and interest in said goods; that the defendants have not damaged the plaintiff in the sum of two thousand dollars by withholding and detaining the same as alleged; that defendant Allen is the owner of and entitled to the immediate possession of the goods mentioned in the first contract, "and that the said contract for sale of same to F. M. Carrillo had been fully paid and discharged, and the title to said property was vested in F. M. Carrillo at the time that the said F. M. Carrillo was declared a bankrupt, and that the trustee in bankruptcy of his estate had the title and right of possession to said property, and sold the same to the defendant, L. Allen, for a valuable consideration"; that the second contract was not paid in full by Car-

rillo and title to same had not passed from plaintiff's assignor, "but that said four booths and four mahogany tables at all times have been and are now the property of the plaintiff," and that the value thereof is the sum of $425, "the balance due on the second agreement." That all said property is now in the possession of the defendant, L. Allen.

As conclusions of law, the court found that defendant Allen is the owner of and entitled to the immediate possession of the goods mentioned in the first contract; that the plaintiff is the owner and entitled to the immediate possession of the four booths and four mahogany tables mentioned in the second contract, "and in case delivery of the same cannot be had, then for the value thereof, to wit, the sum of $425; and plaintiff is entitled to his costs of suit." Judgment was accordingly entered.

By the judgment, it was ordered, adjudged, and decreed that the defendant, Allen, is the owner of and entitled to the immediate possession of all the goods mentioned in the first contract, but there was no alternative provision in that connection for money judgment in case possession could not be delivered. As to the second contract, the judgment was for immediate possession of the goods therein mentioned, "and in case delivery of the same cannot be had, then for the value thereof, to wit, the sum of $425, together with interest thereon at the rate of seven per cent (7%) per annum from date until paid."

Plaintiff appeals from the judgment.

No contention arises concerning the second of these contracts and it need not be considered. The question here is simply: Is the finding supported by the evidence that the first contract was fully paid? This contract in effect provides for a conditional sale and took the form of a lease for the term of twelve months and two days from date (March 29, 1910) on the following terms: "$625 upon the execution of the contract and the further sum of $80 to be paid on the first day of every month ensuing, commencing May 1, 1910, until the full term of eleven months and two days from this date shall have expired, said payments being for the rental use and wear of said property." The purchaser, Carrillo, was to keep the property in good repair and return the same at the expiration of the term in good order, reasonable wear and tear thereof excepted; "it being specially agreed that the

title to all said property is and shall remain vested in said party of the first part'' (the Collender Company). The purchaser was to keep the property insured, the Collender Company to take out the policies at the purchaser's expense; purchaser also to pay all taxes assessed upon the property; interest at eight per cent was to be charged on unpaid installments. It was further provided that upon full performance on his part by the purchaser, the Collender Company would sell and convey the said property to the purchaser, Carrillo, on the first day of April, 1911, for the sum of $106.80.

Witness F. P. Simpson, called for plaintiff, testified that he was vice-president of the Collender Company and acquainted with all the facts relating to these contracts. He testified: ''Neither Mr. Carrillo nor anyone acting for him has paid to the company or offered to pay to the company or tendered to the company any money or any property in payment of all of the money called for in the first contract covering the bar fixtures.'' On cross-examination, and referring to the first contract, he testified: ''Mr. Carrillo failed to keep the terms of his contract because he failed to pay the insurance on the property covered by that contract. It was my recollection that that was the only breach of the first contract.''

The evidence following this statement seems to have been introduced solely for the purpose of clearing up the single question whether or not there was a default in the first contract as to an item of insurance.

The Collender Company made a statement of the account between the company and Carrillo dated August 1, 1912, two months after the latter was declared a bankrupt. This bill includes items of merchandise, and among other items, the following:

"May 26, 1910. To 1 yrs. ins. on bar fixtures, expiring May 24, 1911 ........................$37.00

May 11, 1911. To 1 yrs. ins. on fixtures, expiring May 24, 1912 ............................ 37.00

Dec. 1, 1912. Ins. ............................ 60.00''

The balance struck showed $41.05 due from Carrillo.

It appeared, however, that the item of $60 was incurred in 1911 and was for insurance on the property covered by the second contract. The item of $60 being eliminated, there remained the two insurance charges of $37 each, May 26, 1910, and May 11, 1911. Counsel for plaintiff introduced a copy of

two pages of the Collender Company's ledger, "showing," as stated by counsel, "the payments made, and how made, and how they were credited on the two contracts." On the face of this ledger account, it would appear that on April 1, 1911, the date Carrillo was given credit for $106.80, there was due on the first contract $746.80, and yet witness Simpson testified that this contract was fully paid except a claim for insurance, and this is confirmed by a letter written by the Collender Company's attorney to defendant's attorney. Unexplained, these ledger entries throw no light on the case, and as a complete statement of the account between the company and Carrillo, they are of little value. As to the two items for $37 each for insurance, we are left to such aid as can be given by the exhibits referred to. The ledger shows a charge of $37, account of insurance on May 11, 1910, and opposite is a credit of $37. A group of items appears aggregating $156.50 debit, among which is an item, "May 26, 1910, Insu. $37.00." Opposite is a group of credits, the items showing that they were intended as credits against the group of debits, aggregating $157.50, or one dollar more than seems to have been charged, including insurance on the first contract. Among the credits shown on the statement dated August 1, 1912, is an item October 3, 1911, of $37 which paid the insurance charged May 11, 1911, expiring May 24, 1912. This is the same payment as shown on the ledger of the same date. This policy carried insurance to May 24, 1912. On April 26, 1911, Carrillo sent to the Collender Company a draft for $106.80, stating in his letter that it was the last payment on the bar fixtures and the evidence shows that it was the final payment on the first contract. That being true, the Collender Company had no right to charge insurance under that contract covering the year ending May 24, 1912.

So far as we are able to determine from the confused condition of the record, the findings of the court that the first contract was fully paid is supported by sufficient evidence. It was within the power of plaintiff to produce the original entries of debits and credits showing the exact condition of the account of plaintiff's assignor and Carrillo. This was not done. It is conceded that defendants acquired no rights to the property without having shown full performance on Carrillo's part and that the trustee in bankruptcy acquired no better title than the bankrupt had.

It is claimed that the judgment is void for uncertainty. It was not necessary, as contended by appellant, that as to the goods included in the first contract there should have been an alternative judgment for the value. The court found that title and possession were in Allen, and this was sufficient. As plaintiff was entitled to neither title nor possession, he cannot complain of the form of the judgment. (*Claudius* v. *Aguirre,* 89 Cal. 501, [26 Pac. 1077]; *Caruthers* v. *Hensley,* 90 Cal. 559, [27 Pac. 411]). It appeared without dispute that all the property was in the possession of defendant Allen, and that defendant McDonald had nothing to do with it. The following statement found in the respondents' brief, it seems to us, satisfactorily shows that the judgment as to the property involved in the second contract may be sustained. We quote: "Finding XIV, that all of said property is now in the possession of defendant, L. Allen, and was at all times, and not in the possession of any of the other defendants, the judgment necessarily refers to the findings, and the right of the immediate possession of the same; the right of possession of part is adjudged to Allen, and the other part of the personal property is adjudged to belong to Bradley, as against Allen, who has the possession of same, or for the sum of four hundred twenty-five ($425)) dollars, as against Allen, together with interest thereon. This is made so expressly by the findings, as well as by the judgment, and the findings constitute part of the judgment. Consequently, there is no uncertainty as against whom the judgment is rendered for the possession of the four booths and four mahogany tables, and in case delivery of the same cannot be had from L. Allen, then for the value, or four hundred and twenty-five ($425) dollars, as against L. Allen."

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.