[Civ. No. 2112.  Third Appellate District.—November 24, 1920.]

## J. H. WELLMAN, Respondent, v. M. J. CONROY, Appellant.

[1] LANDLORD AND TENANT—ASSIGNMENT OF LEASE—ACCEPTANCE OF RENTS FROM ASSIGNEE—ABSENCE OF NOVATION.—A novation is not created by the mere assignment of a lease and the acceptance of rents from the assignee, in the absence of an agreement on the part of the lessor to relieve the lessee from liability.

[2] PRINCIPAL AND AGENT — OSTENSIBLE AUTHORITY — LIABILITY OF PRINCIPAL.—A principal is bound by the act of an agent under a merely ostensible authority only when the third person has in good faith and without want of ordinary care incurred a liability or parted with value, upon the faith thereof.

[3] SALE—LEASE WITH OPTION TO PURCHASE—CONSTRUCTION OF CONTRACT.—A contract providing for the payment of a certain sum as rental for the use of personal property during a stated term and giving the lessee an option to purchase the property for a named amount at the end of the term, if the rent has been paid, is a contract of lease and not of sale, where the instrument also provides that title shall remain vested in the vendor and that the vendor may recover possession whenever necessary to protect itself against loss.

APPEAL from a judgment of the Superior Court of Los Angeles County. Lewis R. Works, Judge. Affirmed.

The facts are stated in the opinion of the court.

Davis & Rush, and Davis, Rush & MacDonald for Appellant.

Henry K. Norton and Roy V. Rhodes for Respondent.

BURNETT, J.—The action was brought by the assignee of the lessor for the recovery of rent upon an alleged lease of personal property, and judgment was for plaintiff. The written instrument under which defendant took possession and continued for some time in the use of said property was executed December 27, 1913. On September 15, 1914, Conroy assigned all his interest in said contract and in the property to a partnership composed of George H. Forster and Elmer Stoner, who in writing agreed to "assume all liability on the said contract or lease, agreeing to perform all the terms and conditions thereof as agreed to by M. J. Conroy." Thereafter Forster and Stoner entered into possession of the property and continued to use it until April 24, 1915, when it was transferred to certain trustees for the benefit of the creditors of said Forster and Stoner. The contentions of appellant are two: First, that at the time of said assignment to the partnership the lessor released the lessee and accepted Forster and Stoner in his place, thereby creating a novation; and, second, that the so-called lease was really a contract of sale, and that by virtue of an action in the superior court brought to recover the possession of said property, plaintiff exercised an election between two inconsistent remedies and was thereby precluded from urging the claim of or to any rental.

[1] It is admitted by plaintiff that his assignor had knowledge of said assignment and recognized Forster and Stoner as succeeding to the interest of Conroy in the lease, but it is claimed that the evidence is sufficient to support the finding of the court that said assignor did not "release the defendant Conroy of and from any of the obligations of said contract." We are satisfied that respondent's position in this respect is entirely sound. It is not contended that any written release of any kind was ever given to Conroy or that his contract was canceled and a new one issued to Forster and Stoner as was usually done when the company intended to release the original lessee. Neither

was there any transfer of the ledger account to the assignee, it remaining in the name of Conroy with this notation: "Forster & Stoner, Suc. 11–12–14." It is true that respondent admits that the lessor received certain payments from the assignee. But this circumstance in connection with said knowledge of the assignment does not prove a novation. Many decisions announce this rule of evidence. We may quote from the syllabus of *Brosnan* v. *Kramer*, 135 Cal. 36, [66 Pac. 979], as follows: "The contract of lease being in writing, could only be altered by a contract in writing or an executed oral agreement. The mere acceptance of rent from a subtenant of the lessee in possession by the lessor, and recognizing him as a tenant, cannot have the effect to alter the contract or release the lessee from his liability for unpaid rent. The lessee cannot by an assignment of the lease rid himself from liability under its covenants. The effect of the assignment is to make the lessee a surety to the lessor for the assignee, who, as between himself and the lessor, is bound as principal, while he remains assignee to pay the rent and perform the covenants." To make the assignment operative as a novation, there must be, of course, some evidence of an agreement or contract on the part of the lessor to relieve the lessee from any liability. The most significant circumstance upon which appellant relies in this connection is found in the testimony that Conroy asked Simpson "if they would take them, take these two gentlemen on what I owed them and release me. Mr. Simpson asked them if they were intending to buy and would make a payment. They told him yes. Mr. Simpson told us to go right ahead, that he would accept them, that he had looked them up and they was considered good risks. He told us to go right ahead and make our transaction, and when we did to come back, he would have the papers ready for us to make the assignment." But conceding that this promise was sufficiently definite to support appellant's claim and that adequate consideration existed for it within the rule announced in *Jordan* v. *Scott*, 38 Cal. App. 739, [177 Pac. 504], we need go no further than to say that it was positively denied by Simpson that any such conversation took place and we must assume that Simpson told the truth. Appellant also attaches some importance to the testimony of

a conversation between Conroy and one Marshall Cruse in which the latter told the former that he was "automatically released the very minute we take these other new customers on." But this was simply an announcement of the understanding by Mr. Cruse of the effect of said assignment and it was not a promise to release Mr. Conroy from liability. Moreover, the conversation was subsequent to said assignment, and hence there was no consideration to support it (*Jordan* v. *Scott, supra.*) Aside from the foregoing, the trial court was entirely justified in ignoring any statement or promises made by Cruse, on the ground that he had no authority to bind or to represent the lessor in the release of any claim against said lessee.

The reasons for holding that Cruse lacked such authority are fully pointed out in the brief of respondent, and as no attempt is made by appellant to meet the argument, we dismiss this point without further consideration.

Nor can it be said that application may be made of the principle of ostensible agency. From the evidence the court was not required to find that the lessor intentionally or by the want of ordinary care caused Conroy to believe that Cruse was authorized to execute a release on behalf of the company. [2] Besides, the principal is bound by the act of an agent under a merely ostensible authority only when the third person has in good faith and without want of ordinary care incurred a liability or parted with value, upon the faith thereof. (Sec. 2334, Civ. Code.) The record does not show that Conroy, in the execution of said assignment, was influenced at all by the consideration of any release from the lessor. It is fair to say that said assignment was not made upon the faith of any such act by Cruse. It is true that he naturally wanted to be relieved from any further liability, but it does not appear that without it he would have declined to assign his interest to Forster & Stoner. Indeed, that he did not rely upon any such release and that, in fact, no release was made, appears from his statement made after said assignment to Cruse, as follows: "I would like to have a release letting me out of this, inasmuch as you have got new parties to look to for your payments."

Another point is made that the Collender Company was estopped to urge this suit by reason of the creditor's agree-

ment, to which we have referred. Therein this claim was scheduled and the agreement was signed by Cruse for the company. The creditors agreed to extend the time of payment of their claims until "such time as the same can either be paid by the profits of the business conducted by trustees herein named or by a sale of the business, as provided under said assignment so made by the owners of said Montana Bar." It may be stated that no sale of the property was had. Said agreement further provided: "It is further covenanted and agreed that neither or any of the creditors undersigned shall or will bring suit upon any claims herein scheduled until such time as said trusteeship is discharged or terminated." Appellant contends that the Collender Company was bound by the terms of said agreement, "and while thereby it could, as it subsequently did, elect to repossess itself of the property mentioned in the agreement, it could not, in violation of the terms of said agreement bring this action upon its scheduled claim." Respondent replies: "A complete answer to this is that Conroy's liability was and is several and unimpaired. The company had a right to pursue either or both avenues of recovery. Forster & Stoner were merely additional sureties on the lease." It is apparent that Conroy's liability was not affected by this creditors' agreement. He was not a party to it, and, manifestly, he parted with nothing of value upon the faith or strength of said agreement. It was, in fact, executed for the benefit of the creditors, and they alone, if anyone, could complain of this independent action brought against Conroy. It is doubtful whether said agreement could be enforced by reason of the uncertainty of its terms, but, at any rate, we cannot perceive how it can operate as an estoppel in this action against Conroy.

[3] But it is admitted by appellant in his closing brief that his main point is that the agreements between Collender Company and Conroy constituted a conditional sale and not a lease, and much of the final brief is taken up with a discussion of this consideration.

The character of said instrument may be disclosed by the following provisions: "The said party of the first part [The Brunswick-Balke-Collender Co. of California], being the owner of the hereinafter described personal property, has leased and does by these premises, lease and rent unto

50 Cal. App.—10

the party of the second part [M. J. Conroy], the following described personal property . . . for the term of eighteen months and no days from the date hereof, on the following terms and conditions, to wit: $2,500, payable in cash at or before the ensealment of these presents, and the further sum of $400, payable at the office of said company in Los Angeles, to be paid on the twenty-seventh day of each and every month ensuing, commencing Jan. 27, 1914, until' the full term of seventeen months shall have expired, said payments being for the rental, use and wear of said property.

"The said party of the second part agrees that he will carefully use and keep in good order the said articles of merchandise hereinbefore described at No. 527 South Main street, Los Angeles, and not elsewhere, except with the written permission of the said party of the first part had and obtained.

"And it is further agreed by and between the parties hereto, that whenever said party of the second part shall fail to pay said rent, or any part thereof, as it shall become due and payable, or shall fail to keep and perform any of the agreements, conditions or undertakings, in this contract contained, especially as to the place where said property shall be kept, or whenever the said The Brunswick-Balke-Collender Co. of California, shall deem it necessary in order to secure itself against loss, although no breach of contract shall have been committed by said party of the second part, then, and in either of such events, the said The Brunswick-Balke-Collender Co. of California, may demand, take and repossess said property with or without process of law, anything herein contained to the contrary notwithstanding.

"And the party of the second part hereby agrees to pay the rent aforesaid at the several times hereinbefore set forth, and at the expiration of the term for which said merchandise is rented and released, to return and deliver the same to the said The Brunswick-Balke-Collender Co. of California, in good order, reasonable wear and tear thereof excepted; it being specially agreed and understood that the title to all said property is and shall remain vested in the said party of the first part."

Then follows a covenant that the party of the first part may keep the property insured at the expense of the second party and that the latter shall pay interest on the "rent at installments and shall pay all taxes and assessments against said property," and the concluding clauses are as follows:

"In the event of said party complying with all the terms of this agreement, the said The Brunswick-Balke-Collender Co. of California shall be required to sell and transfer said property hereinbefore described, to said party of the second part as hereinafter agreed and set forth. . . .

"In consideration of one dollar and other good and valuable considerations, to us in hand paid, we hereby agree to and with M. J. Conroy, the said party of the second part to the foregoing lease, that in the event that he shall on his part, well and truly perform and fulfill all the conditions thereof, and pay, as they become due, the different installments of rent, and all other sums therein and herein agreed to be paid, that we will on the 27th day of June 1915, provided that the said M. J. Conroy shall so desire, sell and convey the property described in said lease to the said M. J. Conroy for the sum of eight hundred and 95/100 dollars, then in cash to be paid us, as hereinbefore set out and agreed upon.

"It is expressly understood and agreed, however, that time shall be of the essence of this contract, and that unless all the conditions of the foregoing lease shall have been fulfilled by the said M. J. Conroy and the sum of ninety-three hundred dollars paid, as aforesaid, then this agreement of sale shall be null and void and shall not bind either party hereto."

We think the language of the parties compels the conclusion that they intended a contract of lease with an option on the part of Conroy to purchase the property. Indeed, it would be difficult to select language more apt to express such intention. The terms they used are peculiarly appropriate to instruments of hiring and leasing, as said in *Harron* v. *Wilson*, 4 Cal. App. 488, [88 Pac. 512]. They referred to it as a "lease" and designated the payments as "rent." To negative any possible contention that the instrument constituted a sale we have but to recall the aforesaid provision in reference to the right of the lessor to recover the possession of said property whenever it was

deemed necessary and the express understanding "that the title to all of said property is and shall remain vested in the said party of the first part." Moreover, to clinch the matter, it is sufficient to recall the fact that the lessee did not promise to purchase the property; he did not obligate himself to pay the additional sum required to obtain the title, but, on the other hand, the lessor was "required to sell and transfer" the property to the lessee "provided that the said M. J. Conroy shall so *desire.*" These expressions indicate clearly that the instrument constituted a lease, with the option on the part of the lessee to purchase by the fulfillment of all the covenants of the lease and the payment of the additional sum therein specified. Applying the fundamental principles of interpretation to the instrument, we are satisfied respondent is right in his contention. If the evidence showed clearly that the parties by their subsequent conduct had treated the instrument as constituting a sale we might follow their interpretation. But such is not the condition of the record, and without making a contract for the parties we cannot say that they intended otherwise than the plain import of their language indicates. Since, therefore, the conditions of the lease were not observed by the lessee and no attempt was ever made to exercise said option to purchase, no inconsistency existed between the action to recover the possession of the property and the other suit against Conroy for the unpaid rent.

Some decisions are cited by both parties in support of their views as to the interpretation of this instrument, but it could hardly be said that any of them is controlling herein. The principles they enunciate must, indeed, be recognized and applied, but there is some difference in the facts, which cannot be ignored.

Respondent confidently relies upon said Harron case, *supra,* and *Harron* v. *Cutting,* 19 Cal. App. 780, [127 Pac. 827]. The instruments in those two cases were identical and quite similar to the one before us, and it was held that each instrument constituted a lease and not a contract of sale.

To the contrary, appellant cites *Wiley B. Allen Co.* v. *Wood,* 32 Cal. App. 76, [162 Pac. 121]; *Van Allen* v. *Francis,* 123 Cal. 474, [56 Pac. 339]; *Lundy Furniture Co.* v. *White,* 128 Cal. 170, [79 Am. St. Rep. 41, 60 Pac. 759]; *Perkins* v. *Mettler,* 126 Cal. 100, [58 Pac. 384]; *Muncy* v.

*Brain,* 158 Cal. 300, [110 Pac. 945]; *Bradley* v. *McDonald,* 36 Cal. App. 807, [169 Pac. 427].

In the Wood case it was not controverted that there was a sale of the piano, the whole dispute being as to the payment of the sum of three hundred dollars on said property.

The question in the Van Allen case was whether the contract was an *absolute* or a *conditional* sale of the property. That it was one or the other could hardly be doubted in view of this covenant on the part of the vendors: "Van Allen and Boughton hereby agree to sell at the sum of seventeen hundred and fifty dollars to William M. Langton" the property described; and this promise on the part of the vendee: "William M. Langton hereby agrees to buy said press as above specified, and to pay therefor on receipt of press cash three hundred and fifty dollars, and the balance in payments evidenced by seven notes bearing legal interest, seven per cent as follows."

In *Perkins* v. *Mettler, supra,* the instrument designated the parties as vendor and vendees, and provided: "The vendor agrees to sell to the vendees, and they agree to buy from him," etc., and the only question was whether it constituted an absolute or conditional sale.

In *Muncy* v. *Brain* the contract was quite similar to the one herein, but the court said: "The question whether or not the transaction was, in legal effect, a lease or a conditional sale, is not necessarily involved in the determination of this appeal, and therefore we need not consider it."

It is true that in the Bradley case, *supra,* this court spoke of a similar contract as follows: "This contract in effect provides for a conditional sale," etc., but it is admitted by appellant that this was *dictum,* the court stating that the question to be determined was whether the finding of payment was supported by the evidence.

It is apparent that these cases cited by appellant furnish no guide for the determination of this cause.

*McCollough* v. *Home Ins. Co.,* 155 Cal. 659, [18 Ann. Cas. 862, 102 Pac. 814], cited in the opening brief, comes nearer supporting appellant's contention, but the court was justly anxious to support the claim of plaintiff, who had acted in good faith in having his home insured and who had made nearly all the payments as provided by the instrument, which the court held to constitute a conditional sale. It is to

be observed, also, that the supreme court held that the vendee had in effect promised to purchase and pay for the premises. This, in connection with the covenant of the vendor to convey, would, of course, make the instrument a contract for the sale and purchase of the property.

After an examination of the entire record, we cannot say that the decision of the trial court was inequitable or in contravention of any principle of law.

The judgment is, therefore, affirmed.

Prewett, P. J., *pro tem.,* and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 20, 1921.

All the Justices concurred.