[Civ. No. 24899. Second Dist., Div. One. Dec. 23, 1960.]

THE PEOPLE, Respondent, v. ONE 1955 BUICK 2-DOOR COUPE, ENGINE NUMBER 6B2066982, Defendant; KELLEY KAR COMPANY (a Corporation), Appellant.

R. F. Neuman for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and David R. Cadwell, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal from a judgment entered in a proceeding instituted by the People of the State of California to forfeit the interest of certain named persons in and to a 1955 Buick automobile upon the ground that said automobile was used to transport marijuana. (Health & Saf. Code, §§ 11610-11629.)

A notice of seizure and intended forfeiture proceedings to James H. Blakely, registered owner of the vehicle; Les Kelley Leasing Company, legal owner of the vehicle; and James Blakely was filed and among other things it was set forth therein that such vehicle was seized by the Bureau of Narcotic Enforcement of the State of California pursuant to section

11611, Health and Safety Code, and was used contrary to the provisions of section 11610, Health and Safety Code, and that the People intended to forfeit any right, title or interest claimed by any of the named persons in and to the automobile.

Kelley Kar Company, doing business as Les Kelley Leasing Company, filed the only answer to the notice as aforesaid wherein it was alleged, among other things: (1) that it was the legal owner of the vehicle; (2) that said vehicle was not used to unlawfully transport any narcotic, and that said vehicle was not used to facilitate the unlawful possession of a narcotic by any occupant thereof contrary to section 11610, Health and Safety Code; (3) that prior to July 19, 1959, claimant entered into a contract in writing with James C. Blakely and James H. Blakely wherein the claimant *"leased"* to the Blakelys the vehicle with an option to purchase the same; (4) that the answering claimant before executing the documents and delivery of the vehicle to the Blakelys as *lessees* with option to purchase, made a reasonable investigation of the moral responsibility, character and reputation of the Blakelys, and that the investigation disclosed that the Blakelys were of good reputation and no facts were known to claimant tending to show that the Blakelys were not of good moral responsibility and that claimant had no knowledge that the vehicle would be used by the Blakelys for the illegal possession or transportation of narcotics.

The trial judge found that the answering claimant was the owner of the vehicle; that on November 2, 1958, the answering claimant leased to the Blakelys the vehicle with an option to purchase the vehicle; that the vehicle was seized by the police on July 19, 1959, and was impounded in a garage; that said vehicle was unlawfully used to transport marijuana (Health & Saf. Code, §§ 11610, 11611); that on the date in question the vehicle was being driven by James C. Blakely; that on the date named James C. Blakely used the vehicle to conceal and transport the narcotic with full knowledge that it was being so used; that the lease between the answering claimant and Blakely was bona fide, entered into without knowledge that the vehicle would be used in violation of the provisions of the Health and Safety Code and that prior to the execution of the contract the answering claimant made a reasonable investigation of the moral responsibility, character and reputation of the Blakelys within the meaning of the law. The court concluded that the vehicle was unlawfully used contrary to section 11610, Health and Safety Code, that the answering

claimant was the sole owner of defendant vehicle and that the vehicle should be forfeited to the State of California. Judgment was entered decreeing the forfeiture. The appeal is by the answering claimant from the judgment.

A résumé of the facts is as follows:

On November 2, 1958, appellant leased defendant vehicle to James C. and James H. Blakely with an option to purchase the same. In the "AUTOMOBILE LEASING AGREEMENT" as it was titled, the appellant was referred to as "Lessor" and the Blakelys as "Lessee." With reference to the "Term" of the lease, it provided that it was for an initial term of six months but that it could be renewed for successive terms of one month each, but not to exceed 24 months; the lessee had the right to terminate the lease at the end of the initial term and at the end of any succeeding term upon notice and the lessors had the same right. The lessee agreed to pay as rental for the use of the vehicle $174 for the first month and thereafter an amount which would be $7.24 less than the rent for the preceding month plus two cents per mile in excess of 2,000 miles per month. The rental included fire, theft and $100-deductible collision insurance and membership in an automobile club. The lessee was also required to agree to provide a deed of trust on certain real property as additional security for any money to become due under the lease. In a separate instrument titled "AMENDMENT TO AUTOMOBILE LEASING AGREEMENT" it was provided that it was "Subject to all other terms of said lease" ("Automobile Leasing Agreement"), that an option was granted to the lessee to purchase the vehicle upon termination of the lease, at the end of the initial term, or termination at any time before final termination, for cash in the amount of the "retail Blue Book" value at the date of any such termination, or upon the maximum final termination for $585 cash or for $650 payable in installments of $62.56 per month until paid in full. It further provided: "In the event this option is exercised by Lessee, unless payment of the purchase price is made in cash as above provided, *Lessee shall execute a conditional sales contract* in form satisfactory to Lessor providing for purchase of said vehicle(s) by Lessee for the—" price. (Emphasis added.)

On July 19, 1959, at about 1 a. m. police officers stopped the defendant vehicle then being driven by James Blakely. The officer found marijuana in the vehicle and on further search found marijuana in the trousers of Blakely. Blakely stated that he had been using marijuana for about a year.

Appellant asserts that it conducted a reasonable investigation of the lessees. No defense was presented as to the issue of the illegal use of the vehicle.

Appellant contends that the agreement entered into was a conditional sales contract; that being a conditional sales contract and not a lease it was entitled under the circumstances to avail itself of the defense of a bona fide holder of a conditional sales contract under section 11620, Health and Safety Code, and that to hold otherwise would be to deny to appellant equal protection of the law as guaranteed by the United States Constitution and the Constitution of the State of California.

Section 11620 of the Health and Safety Code provides for a defense to holders of bona fide liens, mortgages or conditional sales contracts in an action for the forfeiture of a vehicle. This section was amended in 1959 (by eliminating the requirements of a reasonable investigation but not changing the class of persons entitled to assert a defense as lienholders); however, the amendment did not become effective until after the date of the seizure of the defendant vehicle in this case and therefore does not apply in this matter. (*People* v. *One 1959 MG Sport Coupe,* 182 Cal.App.2d 448 [6 Cal. Rptr. 112].)

A lessor is not within the class of persons who are protected by the provisions of section 11620, Health and Safety Code. Where a lessee uses a leased vehicle in violation of section 11610 of the Health and Safety Code the lessor's interest is forfeited to the state for it is said that the lessor is simply an owner who gives consent to another to use the lessor's vehicle. (*People* v. *One 1951 Ford Sedan,* 122 Cal.App.2d 680, 685 [265 P.2d 176]; *People* v. *One 1937 Buick Coupe,* 89 Cal. App.2d 556, 560 [201 P.2d 402].)

We think the agreement in this case was a lease and not a conditional sales contract. The agreement is titled "AUTOMOBILE LEASING AGREEMENT." The first two words of the first document are "THIS LEASE" and repeatedly the document is named and referred to within its own terms as "the lease" and never as anything else. Throughout the instrument the parties are referred to as "Lessor" and "Lessee." The payments made by the "Lessee" are termed "Rental" and part of the rental is a charge of "2 cents per mile in excess of 2000 miles per month." The "Lessor" provided for insurance coverage of the vehicle and reserved the right to cancel the same. The "Lessee" was to furnish a

deed of trust on real property to secure the payments of any money due under the "lease." The lessee was to change the oil and lubricate the vehicle within certain specified times; the lessor had the right to inspect the vehicle during any business hours and if lessor thought it needed any repairs it could make such repairs and charge the same to lessee as rent; the lessee could only permit drivers over 21 and under 65 years of age to drive the vehicle. The lease further provided: "Said vehicle shall not be used in violation of any law or regulation of any governmental body and Lessee shall indemnify and hold Lessor harmless from any and all fines, forfeitures or penalties and shall be liable to Lessor for loss of or damage to said vehicle resulting from conversion or larceny by Lessee's agents, servants and employees and for any confiscation or seizure thereof by any governmental authority and shall be liable for any expenses incurred as a result of any of the foregoing, including attorney's fees and damages or losses which Lessor may suffer by reason thereof."

Lessee was to report to lessor regarding any accident in any way involving the vehicle, within 24 hours after the occurrence of any such accident; lessee was to carry *public liability, property damage* and collision insurance on the vehicle with the lessor as a named assured. It was also set forth: "Lessee does not have and will not receive any equity in above-described car whatsoever and does not have and will not have any interest in title of same, but Lessor reserves the right for accounting purposes in relationship to insurance, traffic citations, etc., to register the above-described car to Lessee at any time during the term of this lease. Lessor also has the right, if the above-described car is registered to Lessee, to re-register the car to Lessor at any time during or after the term of this lease. The Lessee does hereby give Lessor Power of Attorney to sign Lessee's name to any papers necessary to make any transfer of registration."

The concluding sentence of the main body of the lease is as follows:

". . . It is expressly understood and agreed that this is a contract of leasing ONLY and that the Lessee has by these presents acquired no right, title or interest in or to the Leased Vehicle above described."

The lease heretofore referred to was, as indicated, amended by a document titled "AMENDMENT TO AUTOMOBILE LEASING AGREEMENT." The first sentence of the amendment in part reads as follows:

"Subject to all other terms of said lease, Lessee is hereby granted the option of purchasing the vehicle(s) described therein upon termination of said lease, at the end of the initial term thereof, or termination at any time before final termination, provided Lessee has paid all rental due under said lease and is not otherwise in default, for cash in the amount of the retail Blue Book value at the date of any such termination, or should said lease continue to be renewed for the maximum number of months provided thereunder upon final termination for the sum of $585.00 (which the parties estimate will be the then retail Blue Book value) cash, . . ."

The second and concluding sentence states:

". . . In the event this option is exercised by Lessee, unless payment of the purchase price is made in cash as above provided, *Lessee shall execute a conditional sales contract in form satisfactory to Lessor providing* for purchase of said vehicle(s) by Lessee for the installment price and in the installments above set forth." (Emphasis added.)

The lessee is not obligated to buy the vehicle but is only granted an option to purchase it. The record discloses that the option was not exercised in this particular case.

It is difficult to think of words which could have been used by the lessor or the parties to express more clearly the intention to the effect that the documents constituted a lease and not a conditional sales contract. (See *Wellman* v. *Conroy,* 50 Cal.App. 141 [194 P. 728].) Many of the provisions of the documents were common to leases and not common to conditional sales agreements; the intent is clearly set forth that it was a lease and not a conditional sales contract. See: *Harron, Rickard & McCone* v. *Cutting,* 19 Cal.App. 780 [127 P. 827]; *Wellman* v. *Conroy, supra,* 50 Cal.App. 141, 145-148.

A thorough reading of the cases cited by appellant, namely *Lundy Furniture Co.* v. *White,* 128 Cal. 170 [60 P. 759, 79 Am.St.Rep. 41]; and *McCollough* v. *Home Insurance Co.,* 155 Cal. 659 [102 P. 814, 18 Ann.Cas. 862] will demonstrate that they are of no assistance to the appellant in this matter.

█ Appellant further contends that because of the provisions of section 2981 of the Civil Code the instrument must, as a matter of law, be considered to be a conditional sales contract. The pertinent part of that section reads as follows:

"2981. [ *Definitions.*] *As used in this section and in Section 2982 of the Civil Code,* unless the context otherwise requires:

"(a) 'Conditional sale contract' shall mean:

". . . . . . . . . . . . .

"2. Any contract for the bailment or leasing of a motor vehicle, with or without accessories, by which the bailee or lessee agrees to pay as compensation a sum substantially equivalent to the value of the property, and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming, the owner of the property upon full compliance with the terms of the contract." (Emphasis added.)

In short, appellant states that the Civil Code section contains a definition of a conditional sales contract with reference to regulating the sale of automobiles and therefore that definition must necessarily apply in every instance where the term "conditional sale" is used in the statutes and particularly so when so used in the Health and Safety Code. It is to be noted that in the present case the lessee could not become the owner of the vehicle at the end of the rental period (having paid all of the rent) unless it agreed to pay an additional sum which was the amount equal to the full value of the vehicle at that time. The lessee could pay all of the rent provided for and still not become the owner of the car unless he exercised the option to pay the heretofore indicated sum. The lessee could terminate and not become the owner of the vehicle. Furthermore, the lease set forth that the lessee could not become the owner unless he agreed to enter into a conditional sales contract which contract would provide for the payment of the then full value of the vehicle, or at such time to pay the then full value in cash. The Civil Code section in question was, among other things, adopted to cover a lease which was such in name only and was a conditional sales contract in reality. Such is not the instant instrument. Also, it is to be noted that the italicized language of the section itself sets forth a definite limitation. It is apparent from the face of the statute that the Legislature did not intend the definition as contained in section 2981 to govern in the Health and Safety Code.

Section 2981, Civil Code, was added to the statute in 1945 in part as a direct action to control the usury problem which was flagrant in the automobile sales business. (See History in West Civil Code Annotated; 34 State Bar J. 619; *Carter* v. *Seaboard Finance Co.,* 33 Cal.2d 564, 573 [203 P.2d 758].) It was also enacted to prevent automobile dealers from evading the requirements of section 2982 of the Civil Code.

A conditional sale has been defined by the courts on many occasions. The Legislature undoubtedly used the term in the Health and Safety Code as the same had been construed by the courts at the time of the adoption of the Health and Safety

692

Code provisions. (*City of Long Beach* v. *Payne,* 3 Cal.2d 184, 191 [44 P.2d 305] ; *Estate of Ross,* 140 Cal. 282, 289 [73 P. 976] ; *Harris* v. *Reynolds,* 13 Cal. 514, 518 [73 Am.Dec. 600].)

Appellant's last contention is that if the instrument is not construed to be a conditional sales contract then its constitutional rights have been violated. As we have heretofore indicated, it is our opinion that the instrument was a lease and being such the appellant does not have the defenses as set forth in the Health and Safety Code. The Legislature could easily and properly classify conditional sellers in one category and lessors in another category. The fact that both may be dealing in or with automobiles is of no particular consequence. The Legislature saw fit to distinguish between personal property brokers and other lenders of money without difficulty. (*Carter* v. *Seaboard Finance Co., supra,* 33 Cal.2d 564, 587.)

 We conclude that the Legislature can regulate appellant's dealings with reference to protecting the public against excessive charges and unfair practices and at the same time not give to it certain defenses with reference to the matter of transporting narcotics in vehicles which other persons who are also regulated as to excessive charges and unfair practices are granted. The Legislature could well say in effect that whether you can have the advantages of certain defenses depends upon the nature of your interest in the vehicle.

Furthermore, it could be that the Legislature was attempting to impose a forfeiture on those with some control over the management of a vehicle which is used in the narcotic traffic at the same time attempting to give those who retain no management or control over the vehicle some defenses as to a forfeiture. It is obvious which classification the appellant falls into in this case.

 Appellant has challenged the classification in the statute and therefore it has the burden of showing that such classification is arbitrary. If there is any state of facts which can reasonably be conceived which would support a classification made by the Legislature, the existence of that fact is presumed. (*Los Angeles Metropolitan Transit Authority* v. *Brotherhood of Railroad Trainmen,* 54 Cal.2d 684, 694 [8 Cal. Rptr. 1, 355 P.2d 905].) The appellant has failed to sustain such a burden in this case.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.