[S. F. No. 1835.   Department One.—December 10, 1901.]

## T. F. BROSNAN et al., Executors, etc., of Olivia Monroe, Deceased, Respondents, v. GEORGE KRAMER and C. G. LUNDBLADE, Appellants.

LANDLORD AND TENANT—LEASE—ACCEPTANCE OF RENT FROM SUB-TENANT—ALTERATION OF CONTRACT—LIABILITY OF LESSEE FOR RENT.—A written contract of lease can only be altered by a written contract or an executed oral agreement.  The mere acceptance of rent from a subtenant of the lessee in possession by the lessor, and recognizing him as a tenant, cannot have the effect to alter the contract or release the lessee from his liability for unpaid rent.

ID.—EFFECT OF ASSIGNMENT OF LEASE—PRINCIPAL AND SURETY.—The lessee cannot by an assignment of the lease rid himself from liability under its covenants.  The effect of the assignment is to make the lessee a surety to the lessor for the assignee, who, as between himself and the lessor, is bound as principal, while he remains assignee to pay the rent and perform the covenants.

ID.—POWER OF EXECUTORS TO CHANGE LEASE—COMPROMISE OF RENT—SANCTION OF COURT ESSENTIAL.—The executors of a deceased lessor have no power to alter or modify a lease so as, in effect, to create a new lease, without an order of court.  Nor can they compromise or reduce the rent provided for in the lease, unless it is shown that the lessee is unable to pay the full amount, or that the compromise or reduction would be just and for the best interest of the estate, and the compromise or reduction is authorized or approved by the court of probate or the judge thereof.

ID.—ACTION FOR RENT AGAINST LESSEE—FORECLOSURE OF MORTGAGE AGAINST LESSOR—FAILURE TO COUNTERCLAIM RENT.—A claim for rent against the lessee does not arise out of a note and mortgage given by the lessee to the lessor, and has no necessary connection with the subject-matter of an action to foreclose the mortgage, and the failure of the lessor to counterclaim the rent in the action by the lessee to foreclose the mortgage cannot preclude an action by the lessor to recover the unpaid rent from the lessee.

APPEAL from a judgment of the Superior Court of Humboldt County.   G. W. Hunter, Judge.

The facts are stated in the opinion of the court.

J. F. Coonan, for Appellants.

A. J. Monroe, for Respondents.

VAN DYKE, J.—The appeal is from the judgment, with a bill of exceptions.

The main contention on the part of the appellants is, that the court below erred in sustaining the demurrer to certain affirmative defenses set up in the answer.

The action is to recover an alleged balance due on a certain written lease of premises in the city of Eureka. The lease in question was entered into between Mrs. Olivia Monroe, as lessor, and said defendant Kramer, as lessee, January 13, 1892, by the terms of which the premises in question were let for the period of eight years, commencing January 1, 1892, and ending January 1, 1900, at the monthly rent of $160, payable monthly in advance, on the first day of each and every month. Defendant Lundblade became surety for the due execution of the same upon the part of the defendant lessee. The lease contained this clause: ''And the said party of the second part does hereby promise and agree to pay to the said party of the first part the said monthly rent here reserved, in the manner herein specified, and not to let or underlet the whole or any part of said premises, or make or suffer any alteration to be made therein, without the written consent of the said party of the first part; and not to assign this lease without the written consent of the said party of the first part.''

The lessor, Mrs. Monroe, died, November 11, 1893.

By one of the separate affirmative defenses set up in said answer, it is alleged, that on April 22, 1892, the said defendant Kramer, for good and valuable consideration, entered into an agreement with Edward Kramer, Clarence Kramer, and Ralph Kramer, whereby the said defendant Kramer sublet the premises set forth in the lease as follows: To Edward Kramer, from July 1, 1892, to July 1, 1893; to Edward Kramer and Clarence Kramer, from July 1, 1893, to July 1, 1894; to Edward Kramer, Clarence Kramer, and Ralph Kramer, from July 1, 1894, to July 1, 1900; that on said July 1, 1892, said Edward Kramer went into possession of the said premises, and from said date to the present time Edward Kramer, Clarence Kramer, and Ralph Kramer have been in possession of the said premises, in accordance with the terms of said agreement, heretofore stated; that said Edward Kramer, Clarence Kramer, and Ralph Kramer, in consideration of said agreement, agreed to pay the rent as it accrued on

said premises under said lease; that from the eighth day of October, 1892, to the date of her decease said Oliva Monroe recognized Edward Kramer as the tenant of said premises under said lease, and accepted rent from said Edward Kramer during said period of time; that from May 7, 1894, to January 1, 1898, plaintiffs, as executors, recognized Kramer Brothers, being Edward, Clarence, and Ralph Kramer, as tenants of said premises, and accepted rent from said Kramer Brothers. And, upon information and belief, it is alleged, that the plaintiffs, as executors, had actual notice of the subletting of said premises by said defendant to Kramer Brothers, and that on or about the first day of June, 1894, the plaintiffs, as executors aforesaid, agreed with said Kramer Brothers to reduce the said rent provided for in said lease, and to rent said premises to Kramer Brothers from that time, at the rent of $150 per month; that up to the thirty-first day of December, 1895, said agreement was fulfilled and executed by said Kramer Brothers, who paid to plaintiffs, as executors, the sum so agreed upon. It is further alleged, upon information and belief, that on or about January 1, 1896, the plaintiffs, as executors aforesaid, for a valuable consideration, agreed to and with the said Kramer Brothers to reduce the rent on said premises to the sum of $130 per month, and that during all of said period said agreement was in full force, and was fulfilled and executed, and that said Kramer Brothers paid to plaintiffs the sum so agreed upon at all times when demanded, and said plaintiffs, as executors aforesaid, accepted said amount of $130 per month as rent of the aforesaid premises from January 1, 1896, to September 30, 1896. It is further alleged, upon information and belief, that the plaintiffs, as executors, for a valuable consideration, agreed with the Kramer Brothers for a further reduction of rent on said premises to the sum of $100 per month, from October 1, 1896, and that from that date to December 31st, inclusive, the said agreement remained in full force, and during said period was fulfilled and became executed by the payment by said Kramer Brothers to plaintiffs, as executors, of the sum so agreed upon.

For another affirmative defense it is alleged in said answer, that on the same date of the execution of the lease in question, "and as part of the said transaction," said defendant Kramer

loaned to said Olivia Monroe $5,000, payable one year after date, with interest at the rate of ten per cent per annum, the said amount being evidenced by a promissory note of even date, and secured by a mortgage on the land set forth in said lease; that on January 11, 1897, said defendant Kramer instituted an action against plaintiffs, as executors of the last will and testament of said Olivia Monroe, to recover said sum so loaned on said promissory note, and to foreclose the mortgage given as security for said money so loaned, and to recover a deficiency judgment against plaintiffs, as executors as aforesaid, in case said property should not sell for a sufficient sum to pay the amount due and costs; that plaintiffs, as executors, were duly served with process in said action and appeared therein by demurrer, and were granted time wherein to answer, but made default in that behalf, and thereupon judgment was duly given and made, November 30, 1897, in favor of said Kramer for the sum due, with costs, and that the property so mortgaged as security be sold in the manner provided by law, and in case said property should not realize the amount due, a deficiency judgment should be entered; that all of the amounts set forth in the complaint herein alleged to be due prior to February 1, 1897, had accrued and were a subsisting cause of action, in favor of plaintiffs and against the defendant Kramer, on said November 11, 1897; that said plaintiffs, as executors aforesaid, omitted to set up said items accruing prior to January 11, 1897, as a counterclaim in their favor against said defendant Kramer.

As to the defense first above noted, as far as the lessor, Mrs. Monroe, is concerned, the answer simply states that she recognized Edward Kramer as tenant, and accepted rent from him. It does not aver that she had any knowledge of the alleged subletting on the part of the defendant, or that she consented to the same. The contract of lease, being in writing, could only be altered by a contract in writing or an executed oral agreement, and nothing of the kind is pretended here, nor is it averred or shown that she released the defendants from any of the covenants contained in the lease. The mere accepting rent from one in possession under the lease would not have that effect. The lessee cannot by assigning his lease rid himself of liability under the covenants. "The effect of the assignment is to make the lessee a surety to the lessor for the assignee,

who, as between himself and the lessor, is the principal bound, whilst he is assignee, to pay the rent and perform the covenants.'' (Wood on Landlord and Tenant, sec. 350.) It is further stated that the plaintiffs, as executors, from May 7, 1894, recognized the Kramer Brothers as tenants of the premises, and accepted rent from them, and it is alleged that they had notice of the attempted subletting of said premises. The executors had no power to alter or modify the lease, which would be, in effect, making a new lease without an order of the probate court under proceedings had for that purpose. (Code Civ. Proc., sec. 1579 et seq.) It is also alleged that the executors reduced the rent to Kramer Brothers, but it is nowhere alleged that either the lessor, while living, or the executors released the defendant from the obligation to pay the rent according to the terms of the lease. The averments in the answer in reference to the reduction of the rent on the part of the executors does not bring the case within the provisions of the code in reference to compromising a claim or compounding with a debtor, as claimed by the appellants. The provision of the code in question reads: ''Whenever a debtor of the decedent is unable to pay all his debts, the executor or administrator, with the approbation of the court or a judge thereof, may compound with him and give him a discharge, upon receiving a fair and just dividend of his effects. A compromise may also be authorized, when it appears to be just, and for the best interest of the estate.'' (Code Civ. Proc., sec. 1588.) It is not averred or shown that the reduction was by the approval of the probate court, or that it was for the best interest of the estate, or that the lessee was not abundantly able to pay the full sum stipulated in the lease as rent. In the defense secondly above noted it is alleged that the note and mortgage given by the lessor, Mrs. Monroe, to the defendant Kramer was a part of the transaction of the making of the lease. No facts are stated showing how the lease is connected with the note and mortgage, or wherein it forms part of the same transaction. The provision of the code which bars a counterclaim, unless set up in an action brought against the party in whose favor it exists, refers to ''a cause of action arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim or connected with the subject of the action.'' (Code Civ. Proc., sec. 438, subd. 1,

and sec. 439.)    Pomeroy on Remedies and Remedial Rights (page 802), in discussing the meaning of this provision of the code, said: "Undoubtedly the codifiers and the legislature, in drawing and adopting the first subdivision, had in mind the doctrine of recoupment, and so framed the language that it should include cases of recoupment and all others, legal and equitable, analogous to it; that is, all cases in which the right of action of the plaintiff and that of the defendant arise from the same contract. . . . The central idea of this subdivision, then, is that one and the same contract is the basis of both parties' demand for relief." There is no natural or necessary connection between a note and mortgage and a lease of the premises, and they are separate and distinct contracts, and the rights under the lease did not arise "out of the transaction set forth in the complaint as the foundation of the plaintiff's claim or connected with the subject of the action" in the foreclosure case.

The demurrer to the so-called separate defenses was properly sustained, and the judgment is affirmed.

Garoutte, J., and Harrison, J., concurred.