[Civ. No. 1873.  Second Appellate District.—May 16, 1917.]

[Civ. No. 2118.  Second Appellate District.—May 16, 1917.]

## C. L. VOSS, Respondent, v. ADOLPH LEVI, Appellant.

LANDLORD AND TENANT—VIOLATION OF COVENANT PROHIBITING SUBLET-TING—ACCEPTANCE OF RENT FROM OCCUPANT—GUARANTOR OF ORIGI-NAL LESSEE NOT RELEASED.—Under the terms of a lease contain-ing a covenant prohibiting the subletting of the demised premises without the written consent of the lessor, the guarantor of the lessee is not released from his contractual obligation, by the mere fact that a transfer of the business conducted on the demised prem-ises was made, and that the lessor's agent accepted the rental from the transferee and gave him receipts therefor in his own name, or by the fact that the lessor's agent informed the occupant that he might move out if he desired, in the absence of a surrender of the premises and an acceptance thereof.

APPEALS from judgments and order denying a new trial of the Superior Court of San Diego County.  C. N. Andrews, Judge.

The facts are stated in the opinion of the court.

Hoff & Chatterson, for Appellant.

E. T. Lannon, for Respondent.

JAMES, J.—On the twenty-fourth day of January, 1911, one Trepte leased to the Diamond Carriage & Livery Company, a corporation, certain real property in the city of San Diego for a period of five years for a total rental of seven thousand five hundred dollars, which was made payable monthly in advance at the rate of $125 each month. The lease contained a term prohibiting subletting without the written consent of the lessor. Adolph Levi and J. E. Connell signed the lease as guarantors. On the twelfth day of June, 1913, Trepte assigned the lease to Voss, the plaintiff herein. The plaintiff was not a resident of the state, but was at all times material to this controversy represented by E. E. Selmser, who resided in the city of San Diego. The lessee company, by reason of nonpayment of state license tax, forfeited its charter on November 30, 1912. The stock of the company had theretofore been transferred to a firm called Davis & Crawford. Subsequent thereto Davis & Crawford transferred to Adolph Levi, and Edgar Levi and they in turn transferred to A. C. Griffith, who in turn transferred to one Morse. In September, 1914, Morse moved out and left the property vacant. The business during all of these times was conducted either under the name of "Diamond Carriage & Livery Company," or "Diamond Carriage Company." After the transfer of the lease by Trepte, the rent was paid to the agent of the plaintiff, who received checks from individuals occupying the premises and gave receipts to and in the names of such individuals. Morse had a conversation with Selmser, the agent of the plaintiff, prior to September, 1914, in which this agent informed Morse that he could surrender the property at any time he desired, as more rental could be secured by the owner than was being paid under the lease. Morse testified that he asked for a reduction of rent, to which the agent would not consent, and was told that if he wanted to give up the premises he would be released. He further testified that he moved out, but after he moved out rent was demanded from him by Selmser. No rent was paid after the first day of September, 1914, and on about the 19th of January, 1915, Selmser, on behalf of plaintiff, took possession of the premises, made material changes in the building by having stalls taken out and a cement floor put in, all in preparation to change the use of the building from that to which it had theretofore been put. There were two actions brought for rent by which the plain-

tiff sought to recover against Adolph Levi as guarantor under the lease, Connell having died in the meantime. The complaint in the first action was filed on November 18, 1914, and in that action the rental for the months of September, October, and November, 1914, amounting to $375, was sought to be recovered. Thereafter, in June, 1915, another action was brought to recover rental alleged to have accrued for the months of December, January, February, March, April, and May, 1915. In the first action recovery of the amount sued for was allowed by the court. In the second action, the court found that the lease had been terminated on the nineteenth day of January, 1915, when the plaintiff took possession and assumed control of the premises, and therefore allowed a recovery only of rental for the month of December and nineteen days in January, 1915. The defendant appealed from the judgment in the first case and from an order denying a motion for a new trial. The defendant also appealed from the judgment entered in the second case. The plaintiff was dissatisfied with the judgment in the second case, because the court limited the recovery to the amount of rental accruing only to the 19th of January, 1915, and his appeal from that judgment is also brought here; the appeals being numbered respectively, Civil 1873 and 2118. By a stipulation entered into between counsel, these appeals have been consolidated and are presented together.

There is really but one point material for consideration as determinative of both appeals, and that is: Was the lease originally entered into by the corporation lessee terminated prior to September, 1914, by surrender of the premises and the acceptance thereof by the assignee of the lessor? In addition to facts shown, and which have been recited in brief in the foregoing, it also appeared in evidence that no written consent had ever been given by the lessor or his assignee, or the agent of the latter, to the assignment of the lessee's interest. It did appear that the several persons holding possession under the lease paid the rental to the agent of the owner, and that he issued to them receipts in their own names. It did not appear, however, in any other way than as such acts would give evidence of, that the owner ever consented to release the original lessee or the guarantors on the lease from the obligations of their contract. The business carried on on the premises up to the time that Morse moved out was always conducted under

the name of the "Diamond Carriage & Livery Company," or the "Diamond Carriage Company," and the several persons who occupied the premises claimed to so occupy them under the lease as originally made and under all the particular terms thereof. Furthermore, the possession of the premises was passed to each by the act of the preceding occupant, the owner having no part whatever in making delivery of the premises to any of the occupants, except to the original lessee. The mere acceptance of rental from the person in possession of the premises could not amount to a consent to release parties from the obligations of their written contract. Such obligations so solemnly expressed are not to be so easily put an_ end to. Notwithstanding that the agent, Selmser, told Morse prior to September, 1914, that he might move out if he desired, that permission would not become of binding effect upon the lessor until the surrender of the premises had been accepted by the latter. Such acceptance of surrender was evidenced only at the time the plaintiff, on the nineteenth day of January, 1915, took possession of the premises and proceeded to have them remodeled. That an acceptance of surrender was then completely had, we have no doubt. The court's conclusion on that matter we fully agree with. The cases of *Bradbury* v. *Higginson,* 162 Cal. 602, [123 Pac. 797], and *Welcome* v. *Hess,* 90 Cal. 507, [25 Am. St. Rep. 145, 27 Pac. 369], which are cited by both counsel in the case, furnish no argument which, in our opinion, proposes any different conclusion than that which we have expressed.

The judgment and order in case No. 1873 are affirmed. The judgment in case No. 2118 is affirmed.

Conrey, P. J., and Works, J., *pro tem.,* concurred.