[Civ. No. 2587.   Second Appellate District, Division One.—November 23, 1918.]

C. E. JORDAN, Appellant, v. F. T. SCOTT et al., Respondents.

LANDLORD AND TENANT—TRANSFER OF LEASE BY TENANT—LIABILITY OF ORIGINAL LESSEE.—A sale and transfer of a leasehold by a tenant, even with the consent of the landlord, does not release the tenant from liability under his covenants in the lease.

ID.—ACTION FOR RENT — RELEASE OF LESSEE—FINDING CONTRARY TO EVIDENCE.—In this action to recover from the original lessee the rent due under a lease, the finding that the defendant had been released by an agreement entered into by the plaintiff, who was the assignee of the lessor, is contrary to the evidence, there having been no release in writing and no "new" consideration for the alleged release.

ID.—TRANSFER OF ENTIRE ESTATE—ASSIGNMENT.—Where a tenant transfers his entire interest in either the whole or a part of the demised premises, the legal effect is an assignment and not a subletting, regardless of the form of the instrument or conveyance by which the term is disposed of.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Charles Wellborn, Judge.

The facts are stated in the opinion of the court.

George H. Woodruff and Clyde C. Shoemaker, for Appellant.

Eugene A. Tucker and Harriman & Ryckman for Respondents.

MYERS, J., *pro tem.*—Plaintiff appeals from a judgment in favor of defendants in an action to recover rent due and unpaid under a written lease of a certain storeroom in the city of Los Angeles.   On December 1, 1911, plaintiff's assignor, Marsh, leased the premises in question to defendant Scott for a term which, as extended by a supplemental agreement in writing, expired January 31, 1915, and Scott entered into possession thereunder.   November 30, 1912, Scott, by a written agreement which was in form and terms a sublease, but which plaintiff contends was in legal effect a *pro tanto* assignment, demised a specified portion of the leased premises to one Ostrow for a term one day longer than his own term, to wit, until February 1, 1915, and Ostrow entered into possession of that portion of the premises.

On January 1, 1913, Scott sold, assigned, and delivered to Gaudreau and Wilson his lease from Marsh and his lease or contract with Ostrow, and Gaudreau and Wilson thereupon entered into possession.   On March 19, 1913, Ostrow sold and assigned to defendant Tuck her sublease or agreement for a specified part of the premises, and Tuck entered into possession thereof.

No part of the rent was paid to plaintiff or his assignor subsequent to June, 1913, but defendant Tuck paid in full the rent reserved under his contract for a portion of the premises so long as he continued in possession thereof, to defendant Gaudreau.   This was paid at the rate of $55 per month, which

plaintiff alleged and produced evidence to prove was the proportionate share of the rent of the whole premises chargeable to the portion thereof occupied by Tuck.   The foregoing facts were all found by the court, except that it made no finding as to the proportionate rental value of the premises occupied by Tuck.   The court held that Tuck's contract was a sublease and that he was, therefore, not liable to the plaintiff.

As to the defendant Scott, the court found that on March 1, 1913, two months after he had sold and delivered his leasehold interest to Gaudreau and Wilson, the landlord, Marsh, released him from the covenants of his lease by an agreement made at that time.   The sole question in this connection is whether or not the finding is supported by the evidence.   It is well settled that a sale and transfer of his leasehold by a tenant, even with the consent of the landlord, does not have the effect of releasing him from his liability under the covenants of the lease.   (*Bonetti* v. *Treat,* 91 Cal. 223, [14 L. R. A. 151, 27 Pac. 612] ; *Brosnan* v. *Kramer,* 135 Cal. 36, [66 Pac. 979] ; *Schehr* v. *Berkey,* 166 Cal. 157, [135 Pac. 41] ; *Henne* v. *Summers,* 23 Cal. App. 763, [139 Pac. 907].)

The court further found that thereafter Marsh recognized and accepted Gaudreau and Wilson as his tenants, received and collected rents from them, and at no time thereafter recognized Scott as a tenant, or demanded rent from him, prior to the bringing of this suit.   But no claim is here made of a novation, and there could be none because the assent of three parties is requisite to such a contract, and there is no evidence of such assent on the part of Gaudreau and Wilson.

The substance of the testimony of defendant Scott in support of the finding of a release (reduced to narrative form) is as follows: ''I had a talk with Marsh in March, 1913.   He said he wanted me to make the transfer over to the other parties, the parties in possession, and I agreed to do it.   He said at the present time he was not situated to collect the rents from them and they would like to have the matter fixed up so they could recognize the other parties and accept their rents. And he said that he would give me a release from the original lease that I held, had held, and he brought out papers and I signed them and gave them back to Mr. Marsh.   He said that if I signed those papers I would be absolutely released from the payment of any other moneys.''   The paper which he then signed was as follows:

"Los Angeles, Cal., 3/1, 1913.

"In consideration of one dollar, the receipt whereof is hereby acknowledged, I hereby transfer, assign and set over unto Gaudreau & Wilson all my right, title and interest in the within lease, subject to all its terms and conditions. This transfer does not consent to any further transfers of the within lease.

"F. T. Scott."

This testimony was corroborated by another witness and denied by Marsh; but it was, of course, amply sufficient to support the finding, *if* such a parol agreement under those circumstances could have the legal effect of a valid release. Section 1541 of the Civil Code provides: "An obligation is extinguished by a release therefrom given to the debtor by the creditor, upon a new consideration, or in writing, with or without new consideration."

Here there was no release in writing, and it remains only to consider whether there was "a new consideration."

Consideration is defined by Civil Code, section 1605 as follows: "Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

As was well said by the supreme court of New Jersey in *Conover* v. *Stillwell,* 34 N. J. L. 54, at page 57: "It must be either such as deprived the person to whom the promise was made of a right which he before possessed, or else conferred upon the other party a benefit which he could not otherwise have had. Thus, part payment of a debt overdue is not a valid consideration for an agreement to postpone or discharge the payment of the residue (citing cases). So a promise to pay increased compensation for services which the party was under a prior legal obligation to render, is not valid." (Citing cases.)

Was Scott deprived of any right, or did he suffer or agree to suffer any prejudice on this occasion? We think not. The only thing he did or promised to do was to sign the written assignment of lease to Gaudreau and Wilson. He had already, two months previously, sold, assigned, and delivered said lease to them and they had entered into possession thereunder. The

sale and delivery of the lease transferred all his interest and left nothing remaining in him thereafter to be transferred. If further paper evidence of the transfer was of any value, it was his duty to furnish it.

A similar question arose in the case of *Sullivan* v. *Sullivan,* 99 Cal. 187, [33 Pac. 862], Michael Sullivan had died owing $854 to the estate of his deceased brother John. He left a policy of life insurance payable to his widow, Margaret, the policy being among the papers of John's estate in the possession of his executor. It was necessary for Margaret to obtain the policy in order to collect thereon. She entered into a written contract with the executor whereby he agreed to search for, find, and deliver the policy, in consideration of which she agreed to pay the $854 out of the proceeds thereof. He performed the contract on his part and she, after collecting the money, refused to pay; whereupon he sued on the contract and recovered judgment. The supreme court, in reversing the judgment for lack of consideration to support the contract, said: "It is well settled that neither a promise to perform a duty, nor the performance of a duty, constitutes a consideration of a contract."

In *Estate of Casner,* 1 Cal. App. 145, [81 Pac. 991], Jane Casner had conveyed certain property to her daughter and son-in-law upon their agreement to support her during her natural life. Thereafter she assigned certain other property to them upon the same consideration. This court, in holding the latter assignment void for want of a consideration, said: "Support which they were already bound to give her could hardly form a consideration for the further assignment of property by Jane Casner to the appellants."

So, too, in *Heim* v. *Butin,* 109 Cal. 500, [50 Am. St. Rep. 54, 42 Pac. 138], where the mortgagee in foreclosing a mortgage agreed with the mortgagor that if the latter would suffer his default to be taken and would not bid at the sale, he would not take a deficiency judgment, and the mortgagor having defaulted and remained away from the sale, the mortgagee, in violation of the agreement, procured a deficiency judgment against him, the supreme court held the agreement void for want of consideration because the mortgagor had no defense to the action and, therefore, suffered no prejudice because of the default.

Applying the doctrine of these decisions to the facts here, it is apparent that Scott suffered no prejudice by reason of signing and delivering the written assignment. It remains only to consider whether or not any benefit was conferred on Marsh thereby.

It is apparent that Marsh acquired no right thereby which he did not already possess. The written assignment conferred upon him no right of action as against either Gaudreau or Scott. His right to recover the rents from Gaudreau grew out of the latter's occupancy of the premises by reason of privity of estate. (*Bonetti* v. *Treat*, 91 Cal. 223, [14 L. R. A. 151, 27 Pac. 612] ; *Baker* v. *Maier,* 140 Cal. 530, [72 Pac. 22].) No privity of contract between Marsh and Gaudreau could be created by the act of Scott. As this court said, with respect to a somewhat similar situation, in *Lutton* v. *Rau,* 37 Cal. App. 429, [173 Pac. 1111] : ''We do not think that . . . the production of such an assignment would aid the plaintiff in making out his claim against the defendant for rent which accrued subsequent to the date of the transfer of possession of the premises from respondent to the last holder.''

We conclude that the release in question, being neither in writing nor upon a new consideration, was of no legal effect, and that the finding of the trial court upon this point is, therefore, contrary to the evidence.

As between appellant and the defendant Tuck, the correctness of the judgment depends upon the single question whether or not the contract between their respective assignors was a sublease or an assignment of the term as to a portion of the premises demised. If it was the former, the judgment is correct; if it was the latter, it was erroneous. As stated above, the instrument purported to be and in form and terms was a sublease, but it was for a term one day longer than that demised by the principal lease.

Questions similar to this have frequently arisen in the courts and there is an apparent conflict in the decisions which can be in the main resolved by separating those cases wherein the controversy arose between the original tenant and his lessee or assignee, from those wherein the controversy was between the original landlord and the lessee or assignee of his tenant. In the latter class of cases (and the case at bar comes within that class) the clear preponderance of authority is to the effect that where a tenant transfers his entire interest in

either the whole or a part of the demised premises, the legal effect thereof is an assignment and not a subletting, and that it is immaterial by what kind of an instrument or conveyance the term is so disposed of.    (24 Cyc. 972–976, and cases cited. 18 Am. & Eng. Ency. of Law, 2d ed., 656, 657, and cases cited; 1 Tiffany on Landlord and Tenant, sec. 151; Wood on Landlord and Tenant, sec. 69; *Smiley* v. *Van Winkle,* 6 Cal. 605; *Jeffers* v. *Easton, Eldridge & Co.,* 113 Cal. 345, 352, [45 Pac. 680].)

The legal effect of the contract between Scott and Ostrow was to create an assignment of the term with respect to that portion of the premises described therein.    Defendant Tuck, having entered into possession thereunder, thereby became liable by privity of estate to pay to the lessor Marsh a proportionate share of the rental reserved in the lease.    (24 Cyc. 1180; Taylor on Landlord and Tenant, sec. 443; Wood on Landlord and Tenant, sec. 311; *Ellis* v. *Bradbury,* 75 Cal. 234, [17 Pac. 3].)    It is obvious that this liability could not be discharged by the payment of rent to Gaudreau, who is not claimed to have been an agent for Marsh.

The judgment appealed from is reversed.

Conrey, P. J., and James, J., concurred.