[Civ. No. 6154. First Appellate District, Division Two.—March 12, 1928.]

MAX WINTER et al., Appellants, v. W. M. KNAPP et al., Respondents.

J. Wiseman Macdonald for Appellants.

Dryer, Castle & Hartke for Respondents Knapp and Mc-Naughton.

MURPHEY, J., *pro tem.*—This is an action to recover the rent due under the terms of a written lease which was executed on the third day of January, 1921, by H. S. Laughlin, who was the lessor, and defendants W. M. Knapp, M. L. Knapp and Matthew McNaughton as lessees. The term was for a period of three years. The original lessees went into possession on the date of the lease and occupied the premises up to and including November 30, when they assigned their interest in the lease to D. J. Miller and Florence M. Miller, his wife, who went into possession of the leased premises and occupied them for a short period of time, when they assigned them to other persons. The lessor H. S. Laughlin

assigned his interest in the lease to the plaintiffs, who at the same time purchased the title to the property that was subject to the lease. Judgment went for the defendants and the plaintiffs appealed.

The defendants Knapp and McNaughton contended successfully in the trial court that, by reason of an oral agreement between themselves and the then owner of the property, who is the plaintiff in this action, at the time the assignment herein set out was made by them to the Millers, they were released from paying any further rental under the lease after the assignment thereof to the Millers. The assignment to the lessees Millers is in words and figures following:
"H. S. Laughlin,
    235–40 Title Insurance Bldg.,
        Los Angeles, Calif.

                          Nov. 30, 1921

For a good and valuable consideration to us in hand paid, the receipt of which is hereby acknowledged, we hereby sell, assign, transfer and set over unto D. J. Miller and Florence M. Miller, his wife, all our right, title and interest in and to the within lease.

                    W. M. KNAPP.
                    MATTHEW McNAUGHTON.
                    M. L. KNAPP.

Approved:
    MAX WINTER."

    The trial court over the objections of the plaintiffs, permitted the defendants, the original lessees, to testify that during the negotiations leading up to the assignment plaintiffs orally agreed to release said defendants from any further obligations under the lease and to look solely to the assignee for future payments of rental. We are of the opinion that this was error, fatal to the verdict and judgment rendered thereon in favor of the defendants. Had this evidence been excluded there would have been no defense whatever to the plaintiff's cause of action.     It is the settled principle of law in this state that the original lessee of an assigned lease is liable on the lease executed by him unless excused from so doing by some legal, binding acquittance on the part of the owner. In the case of Brosnan v. Kramer, 135 Cal. 36 [66 Pac. 979], the court said:

"The contract of lease being in writing, could only be altered by a contract in writing or an executed oral agreement, and nothing of the kind is pretended here, nor is it averred or shown that she released the defendants from any of the covenants contained in the lease. The mere accepting rent from one in possession under the lease would not have that effect. The lessee cannot by assigning his lease rid himself of liability under the covenants. 'The effect of the assignment is to make the lessee a surety to the lessor for the assignee, who, as between himself and the lessor, is the principal bound, whilst he is assiginee, to pay the rent and perform the covenants.' "

Many other cases might be cited to the same effect. *Cross* v. *Thiele,* 51 Cal. App. 780 [197 Pac. 974]; *Samuels* v. *Ottinger,* 169 Cal. 209 [Ann. Cas. 1916E, 830, 146 Pac. 638]; *Schehr* v. *Berkey,* 166 Cal. 157 [135 Pac. 41]; *Jordan* v. *Scott,* 38 Cal. App. 740 [177 Pac. 504]; *Gordon* v. *Green,* 51 Cal. App. 768 [197 Pac. 955].

It must be borne in mind that all the conversations relied upon by the defendants to relieve themseives from their obligations under the lease, antedated the making of the assignment above set out. The essential elements of these conversations must therefore be presumed to have been merged in the written agreement evidenced by the assignment. In the case of *Eddie* v. *Gage Manufacturing Co.,* 33 Cal. App. 338 [164 Pac. 1133]:

"The instrument whereby the transfer was effected was a naked assignment and did not purport to impose any obligation upon the assignee to pay the rent reserved in the lease. Indorsed thereon and signed by plaintiff, was an instrument in writing as follows: 'I hereby consent to the transfer of a certain lease on 683 Antonio St., from Jay Gage, C. E. McClay, O. E. Freeman, and C. T. Lloyd to Union Car Co., a corporation, provided that said Union Car Company complies with all the legal formalities through its board of directors, . . . ' Under these circumstances, the court properly found this consent to the transfer of the leasehold estate did not release the defendants from their obligation upon the covenant to pay the rent. Indeed, had the consent been unconditional, or had the assignee complied with the conditions so exacted, the finding would not have

been subject to attack upon the record here presented. (*Bonetti* v. *Treat,* 91 Cal. 223 [14 L. R. A. 151, 27 Pac. 612] ; *Brosnan* v. *Kramer,* 135 Cal. 36 [66 Pac. 979] ; 24 Cyc., p. 1177.)

"Neither, since it would have violated a fundamental rule of evidence, did the court err in refusing to permit defendants to introduce evidence tending to show that plaintiff orally agreed to release appellant and his co-lessees from any and all liability upon their covenant to pay the rent reserved in the lease."

This language is significantly applicable to the facts of the instant case where we have a mere naked assignment. The assignees agreed to do nothing and the owner simply approved the assignment and said nothing as to the future obligations of the original lessees. Here, too, the fundamental rules of evidence were violated when the defendants were permitted to testify that prior to the making of the assignment the owner agreed to release them from the covenant to pay rent.

In the case of ·*Jordan* v. *Scott,* 38 Cal. App. 739 [177 Pac. 504] ; a case that bears a very marked resemblance in many respects to the one here under discussion, the court said:

"This testimony was corroborated by another witness and denied by Marsh; but it was, of course, amply sufficient to support the finding, if such a parol agreement under those circumstances could have the legal effect of a valid release. Section 1541 of the Civil Code provides: 'An obligation is extinguished by a release therefrom given to the debtor by the creditor, upon a new consideration, or in writing, with or without new consideration.'

"Here there was no release in writing, and it remains only to consider whether there was 'a new consideration.'

'Consideration is defined by Civil Code, section 1605, as follows: 'Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise.'

"As was well said by the supreme court of New Jersey in *Conover* v. *Stillwell*, 34 N. J. L. 54, at page 57: 'It must be either such as deprived the person to whom the promise was made of a right which he before possessed, or else conferred upon the other party a benefit which he could not otherwise have had. . . . '

"It is apparent that Marsh acquired no right thereby which he did not already possess. The written assignment conferred upon him no right of action as against either Gaudreau or Scott. His right to recover the rents from Gaudreau grew out of the latter's occupancy of the premises by reason of privty of estate. . . . No privity of contract between Marsh and Gaudreau could be created by the act of Scott. As this court said with respect to a somewhat similar situation in *Lutton* v. *Rau,* 37 Cal. App. 429 [173 Pac. 1111]: 'We do not think that . . . the production of such an assignment would aid the plaintiff in making out his claim against the defendant for rent which accrued subsequent to the date of the transfer of possession of the premises from respondent to the last holder.

"We conclude that the release in question, being neither in writing nor upon a new consideration, was of no legal effect, and that the finding of the trial court upon this point is, therefore, contrary to the evidence."

In the present case, as is clearly shown by the record, there is no consideration for the alleged promise of the lessor to relieve the lessees from their obligations under the lease. In a special issue submitted to the jury it found that plaintiffs received "an approved or satisfactory tenant" as consideration for the release of the defendants Knapp and McNaughton from the terms of the lease. At most this was the mere conclusion of the jury and there is no evidence in the record whatever having any bearing or allusion to the question of consideration. The plaintiffs obtained nothing from the assignment that they did not theretofore have. So far as the record shows, they had a satisfactory tenant before and up to the time of the assignment. This was all that they had after the assignment. Nothing was demanded by plaintiffs for their consent to the assignment and nothing was paid by defendants for procuring the consent and approval of the plaintiffs to the assignment.

In *Gordon* v. *Green*, 51 Cal. App. 768 [197 Pac. 956], the court said: "Neither the promise to do nor the actual doing of that which the promisor is by law or subsisting contract bound to do is a sufficient consideration to support a promise made to the person upon whom the legal liability rests, either to induce him to perform what he is bound to do or to make a promise so to do. Accordingly it has been held in this state that neither a promise to perform a duty nor its performance constitutes a consideration for a contract. (Citing authorities.) The modified agreement as found by the court to have been made between the parties was, therefore, a mere *nudum pactum*, which did not relieve defendant from the obligations under his lease."

The assignment in this case was drawn up by the original owner, who was an attorney. The wisdom of the rule against the character of evidence here relied upon by the defendants is well exemplified by the record in this case. The attorney who was the owner and lessor testified in a vague and unsatisfactory way that he understood that the lessees were to be released from the payment of rent, yet when he drew up the assignment he did not so state in the writing. The defendants testified that the plaintiff said he would release them for a satisfactory tenant and that they brought the owner and the new lessees together, and after discussing the matter the owner said he would release them and told them to have the necessary papers prepared and presented to him, which papers were to be a release and assignment. Notwithstanding this statement nothing but the assignment was presented for his signature. Opposed to this testimony was that of the owner that he had never seen the new lessee Miller until long after the assignment had been made and approved by him and the new lessee Miller said that he had never seen or talked to the owner until after he had taken over the leased premises.

No case is called to our attention by the respondents that casts a shadow of doubt upon the rule pronounced by the cases above cited. Counsel cites *Dugan* v. *Phillips*, 77 Cal. App. 268 [246 Pac. 566]. That was a case in which a mutual agreement to arbitrate became executed upon the making of the award and validated the verbal submission. In *Pearsall* v. *Henry*, 153 Cal. 315 [95 Pac. 154, 159], the supreme

court states that this is not an offer to perform an executory oral agreement but an oral agreement that had been fully executed by substitution. This in effect was an offer to prove a novation. There are many cases that hold that a written instrument may be abrogated or canceled by mutual consent. The respondents' answer to the cases cited by appellant is that they are pure *dictum*.

There is some contention that the furniture in the leased hotel building was pledged as security for the rent. There is no doubt but that a formal writing to that effect was executed by the original lessees to the original lessor. In view of the fact that the furniture was conveyed to the lessees under a conditional sale contract containing the following provision: "It is further agreed that the parties of the second part have no right in said property or interest therein that can dispose of by sale or otherwise, or at all, or upon which it can create any lien," there can be little doubt that the so-called pledge was of no substantial value. When the plaintiffs in this action took over the title to the leased property, the then owner assigned this so-called pledge to them. The evidence is clear that this pledgee, the present plaintiff, never had possession of the pledged property and never had the same under his personal control or in his possession. The only act performed to vest any interest in him as pledgee was the act of assigning the original pledge agreement to him by the former owner of the property. This is ineffectual and abortive as an attempt to create a pledge on personal property. Section 2988 of the Civil Code provides: "Delivery essential to the validity of a pledge. The lien of a pledge is dependent on possession, and no pledge is valid until the property pledged is delivered to the pledgee, or to a pledge-holder, as hereafter prescribed."

In *George* v. *Pierce*, 123 Cal. 175 [55 Pac. 777], the supreme court says: "No writings pertaining to a transfer of personal property, regardless of their number or character, can create an actual and continued change of possession as to creditors of the pledgor. Acts only can do it. A visible, actual, continued change of possession must be had, and the law will be satisfied with nothing else. Writings can never accomplish these results."

It would be futile to discuss this question in view of the argument presented by the respondents in their brief which is based upon the principle of confession and avoidance, confessing the error of the trial court in admitting the assignment of the alleged pledge, but contending that the error was not such as to warrant reversal of the judgment. This evidence should not be admitted in the event that another trial of this case should be considered as a remote possibility.

Many assignments of error are predicated upon the rulings of the trial court as to the admissibility of the testimony and to the giving and refusal of instructions to the jury that are unquestionably good as they are in direct contravention of the matter hereinabove discussed. In our judgment the question first discussed in this opinion is determinative of the appeal adversely to the respondent and we feel that no useful purpose would be subserved by specially commenting on the several rulings of the trial court.

The judgment is reversed.

Koford, P. J., and Sturtevant, J., concurred.

A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 10, 1928.

All the Justices concurred.