[Civ. No. 5894. First Appellate District, Division One.—December 19, 1928.]

ALICE JOSEPHINE STREI, as Administrator, etc., et al., Appellants, v. C. EARL BROOKS et al., Respondents. (Two Cases.)

John G. Robertson for Appellants.

Jesse Robinson and Snook & Snook & Chase for Respondents.

THE COURT.—The above actions, which involve claims for rent under the same lease but covering different periods, were tried together, and both appeals are presented on the same record.

The deceased, W. E. Strei, and U. S. Johnson were lessees from John McCaslin of a certain store building in the city of Oakland. On November 29, 1922, they sublet the premises by a lease in writing to defendants C. Earl Brooks and R. G. Bartlett for the term of four years and eleven months at a monthly rental of $225. The rent has been paid in full to March 1, 1926, and in addition $50 was paid on account of the rent for that month. On or about May 14, 1924, there being at that time no default in the payment of rent, Brooks sold to Bartlett his interest in the business which they were then conducting on the premises, and also assigned to him his interest in the lease. Subsequently Bartlett obtained the consent of Strei and Johnson with that of McCaslin and his wife to the assignment. Bartlett remained in possession till the month of April of 1926,

when he vacated the premises. In the first cause of action plaintiffs sought to recover the rent for the months of March, April, May, and June, 1926, less the partial payment made in March, and by the second the rent for the months of August, September, and October, 1926. Defendant Bartlett failed to appear, and a judgment by default was entered against him. Defendant Brooks—who will be hereinafter referred to as the respondent—by his answer alleged, and the court found, that on May 14, 1924, and previous to the time when the rent sought to be recovered became due, the plaintiffs, in consideration of his selling his interest in the business to Bartlett, agreed to release and discharge him from further liability under the lease and to accept Bartlett as the sole tenant; that pursuant to this agreement respondent sold his interest in the business and assigned the lease to Bartlett, whereupon plaintiffs released him from further liability and accepted Bartlett as the sole tenant. It was further alleged and found that on or about March 13, 1926, the plaintiffs entered upon the premises and so changed and altered the same that they were unfit for the purposes for which they were leased, and that the lease was thereby rescinded as to respondent Brooks. From these findings the court concluded that Brooks had been released and discharged from any liability for rent and entered judgment accordingly.

Plaintiffs appeal from this portion of the judgment, claiming that the findings with respect to the agreement to discharge respondent from liability, and the conclusion that the lease was rescinded by the alterations made upon the premises, are unsupported, and, further, that the court erroneously admitted parol evidence to prove the alleged agreement of release.

The terms of the lease are not disclosed by the record, but it is not claimed that they were such that an assignment by respondent would relieve him from the obligation to pay the rent, the effect of his contention that he was released from his obligation being that as between him and the plaintiffs there was a surrender of the term. A surrender, however, being within the statute of frauds (Civ. Code, sec. 1624), was required to be in writing or established by an executed oral agreement (*Welcome* v. *Hess*, 90 Cal. 507 [25 Am. St. Rep. 145, 27 Pac. 369]; *Silva* v. *Bair*, 141 Cal. 599 [75 Pac. 162]; Underhill on Landlord and Tenant,

sec. 704), neither of which was here shown; and unless the facts were such as to estop the plaintiffs from disputing the alleged surrender the claim of the respondent cannot be sustained.

Aside from plaintiffs' written consent to respondent's assignment of his interest in the lease and the acceptance of rent from Bartlett, the assignee thereof, neither of which was sufficient to constitute a surrender and a consequent discharge of the obligation of respondent (*Brosnan* v. *Kramer*, 135 Cal. 36 [66 Pac. 979]; *Samuels* v. *Ottinger*, 169 Cal. 209 [Ann. Cas. 1916E, 830, 146 Pac. 638]; *Bonetti* v. *Treat*, 91 Cal. 223 [14 L. R. A. 151, 27 Pac. 612]; *Voss* v. *Levi*, 33 Cal. App. 671 [166 Pac. 359]; *Wellman* v. *Conroy*, 50 Cal. App. 141 [194 Pac. 728]), the only fact upon which the latter's contention rests is a certain conversation between him and the plaintiff Strei before the making of the sale and assignment mentioned. This conversation—the only one which preceded the sale and assignment—was testified to by respondent as follows: " . . . I told him (Strei) I was anticipating either selling or buying the sole right of the business next door that we were interested in together, and I was interested in knowing whether he would release me from the lease in case I purchased that business, and Mr. Strei's answer to me—and I told him I might buy or sell; I didn't know which at that time. We were dickering, and I did not even give Mr. Bartlett the information on that because that was my own personal information—my own personal matter; and when I saw Mr. Strei Mr. Strei said 'Why, yes, I don't care who buys. I will release either one of you. All I am interested in is getting my money for the rent.' "

Subsequently in response to questions by his counsel the witness gave the following testimony regarding the conversation: "Would you state that conversation again, just what Mr. Strei said with reference to the one who bought or the one who sold? (Answer:) Mr. Strei said—I told him I was figuring on either buying or selling the business that we were co-operating in next door, and that I was interested in knowing whether he would release me from the lease in case I purchased the business— (Question:) You mean in case you purchased the business? (Answer:) In case I sold the business or in case I purchased. I was actually interested in knowing if I could get the sole right to that lease,

and Mr. Strei's answer was he didn't care who purchased, that he would release either one of us, whoever purchased. (Question:) He would release either one, whoever purchased? (Answer:) He would release either one of us as long as he received his money for the rent; he didn't care who purchased it. (Question:) Well, what with regard to the one who sold. You say he would release either one who purchased. What did he say with reference to the one who sold? (Answer:) He would release either one of us from the lease so long as he received his money; that he did not care which one purchased the business. (Question:) And that was the extent of the conversation at that time? (Answer:) Yes."

On cross-examination the witness testified that the following was substantially the statement made by Strei: "I will release either of you from the lease so long as I get my money."

While the question whether there was a surrender was a question of fact (*Triest* v. *Goldstone*, 173 Cal. 240 [159 Pac. 715]; *Steel* v. *Thompson*, 59 Cal. App. 191 [210 Pac. 430]); here it is manifest from the conversation between respondent and Strei that the latter was not referring to the covenant to pay the rent, and that there was no promise to release either of the lessees from his obligation in this respect, whatever may have been the intention of the parties with regard to other covenants contained in the lease.

As he states, respondent was interested in knowing whether, in the event of a sale, "the buyer could get the sole right to the lease," and it is equally clear from Strei's answer to the inquiry that the latter had no objection to, any arrangement which the lessees might make between themselves provided the rent was paid or, as he expressed it, "so long as I receive my money." This, however, was not equivalent to a promise to release respondent from further obligation, nor was it sufficient to justify his subsequent reliance thereon as having that effect.

It further appears that after the assignment Bartlett, the assignee, requested the owner McCaslin to make certain alterations in the premises. These consisted in the removal of two windows and the substitution therefor of folding doors in the front of the building. This change was for the sole benefit of the lessee; it was not made by the plaintiffs,

whose only connection therewith was that they at the request of Bartlett consented thereto, and did not constitute an eviction.

The evidence shows that Bartlett abandoned the premises, and appellants object to a further finding that after this occurred the premises could have been rented by the plaintiffs, but that they failed and neglected to do so. These facts, if true, were immaterial. The premises, as the evidence shows, were abandoned by Bartlett for no reason other than that he was unable to pay the rent, and there was no re-entry by the plaintiffs or by the owner. Under such circumstances the plaintiffs might elect to leave the premises vacant and recover the rent as it became due (*Respina* v. *Porta*, 89 Cal. 464 [23 Am. St. Rep. 488, 26 Pac. 967]; *Bradbury* v. *Higginson*, 162 Cal. 602 [123 Pac. 797]).

We are satisfied that there was no reasonable ground for the conclusion that the facts constituted a surrender or that respondent was released from liability for the rent.

The judgments appealed from, in so far as it is adjudged therein that plaintiffs take nothing as against defendant C. Earl Brooks, and that the latter be given judgment for his costs of suit, are reversed.