[Civ. No. 5090. Third Appellate District.—September 14, 1934.]

FLORENCE HAYNES LINDLEY et al., Respondents, v. L. D. SALE et al., Appellants.

Lloyd W. Moultrie for Appellants.

J. Wiseman MacDonald for Respondents.

THOMPSON, J.—This is an appeal from a judgment which was rendered against the assignors of a lease for installments of rent, taxes and assessments due under the terms of a 99-year lease. The sole question to be determined is whether the lessees were in default for failure to pay taxes and street assessments which were levied but not delinquent at the time of the assignment.

The plaintiffs own certain lots in Los Angeles. November 19, 1921, these lots were leased to the defendants for the term of 99 years for the aggregate rental of $891,000 payable in monthly installments of $750 on the first day of each month beginning with January 1, 1922, together with all taxes and assessments levied against the property. March 27, 1931, the lease was assigned to Robert P. Biggs, who is not a party to this suit. The assignment was recorded December 31, 1931. All installments of rent which were due had been paid prior to the assignment. Two installments of rent which accrued in May and June subsequent to the assignment were not paid. At the time of the assignment the second installment of taxes for that year, amounting to $2,666.15, and certain street assessments were unpaid but not delinquent. The street assessments which accrued prior

to the assignment were secured by bonds and authorized to be paid in installments pursuant to the provisions of the Public Improvement Act of 1911, page 1192. The lease provided for the assignment and the release of defendants from the obligations thereof provided they were not in default of payments at the time of the assignment and on condition that the assignees expressly accept and assume in writing the terms and obligations of the lease. The lease contains the following provisions:

"The lessees, in consideration of the leasing of the premises as aforesaid, hereby covenant and agree to and with the said lessors to pay rent, and do hereby bind themselves, their heirs and assigns, well and truly to pay rent, for said demised premises, in the full sum of eight hundred ninety one thousand ($891,000.00) dollars, being at the monthly rate of seven hundred and fifty ($750.00) dollars for each and every month of and during the term of this lease. . . .

"As a further consideration for the leasing and demising as aforesaid the said lessees further covenant, promise and agree to bear, pay, and discharge, in addition to said reserved rent, all rates, taxes, charges for revenue and otherwise, assessments and levies, general and special, ordinary and extra ordinary of every name, nature and kind whatsoever, . . . which may be taxed, charged, assessed, levied or imposed upon said premises, or upon any or all buildings and improvements thereon, during the term hereby granted. . . .

"It is further covenanted and agreed between the parties that the lessees shall have the right at any time to assign this lease, provided that they are not in default hereunder, and further provided that such assignment shall be in writing and duly recorded, and that the assignee of said lessees shall expressly accept and assume, in said written assignment, all the terms, conditions, and covenants in this lease contained to be kept and performed by said lessees, and shall expressly agree to comply with and be bound by them. . . . And in the event of such assignment said lessees so assigning shall thereby be thenceforth released and discharged from further liability under this lease, or under any of the agreements or covenants herein contained."

Suit was commenced June 2, 1931, by the owners of the property against the lessees, for two monthly installments of rent which accrued after the lease was executed, and for the second installment of taxes and street assessments then payable but not delinquent, on the theory that the failure to first pay the taxes and assessments which constituted liens against the property placed the lessees in default and rendered them personally liable for all such payments under the terms of the lease. The cause was tried by the court sitting without a jury. The court adopted findings to the effect that the lessees were in default under the terms of the lease at the time of the assignment thereof and thereupon rendered judgment against them for the sum of $4,908.47 and costs of suit. From this judgment the defendants have appealed.

■ The assignment of a lease with the consent of the lessor does not relieve the lessee of his express covenant to pay rent or taxes in the absence of an express release of his obligations by the lessor. It has been said the effect of such an assignment is to make the lessee a surety for the payment of the obligations by the assignee. The lessor may still hold the lessee responsible. (*Samuels* v. *Ottinger,* 169 Cal. 209 [146 Pac. 638, Ann. Cas. 1916E, 830]; *Strei* v. *Brooks,* 95 Cal. App. 589 [273 Pac. 145]; *Winter* v. *Knapp,* 90 Cal. App. 75 [265 Pac. 527]; 36 C. J. 371, sec. 1227; 16 R. C. L. 846, sec. 346; 1 Tiffany on Landlord and Tenant, p. 962, sec. 157 A–2.) But in the present case the lease specifically releases the lessees from their obligation to pay rent and taxes in the event of an assignment thereof provided they were "not in default" at the time of the assignment. The lease provides in that regard: "In the event of such assignment said lessees so assigning shall thereby be thenceforth released and discharged from further liability under this lease, or under any of the agreements or covenants herein contained."

■ We are of the opinion the lessees were not in default of payments of rent, taxes or assessments on March 27, 1931, when they assigned the lease to Robert P. Biggs, as they were authorized to do by the express terms thereof. No installment of rent was then unpaid or due. The second installment of taxes did not become delinquent for some

time thereafter. The payment of the street assessments had been extended pursuant to the provisions of the Public Improvement Act of 1911, and were not then due. Neither the second installment of taxes nor the street improvement assessments were then enforceable by law. ■ The law fixing the time within which the taxes and assessments may be paid became a part of the contract of lease. It may not be said the lessees were *in default* for failure to pay taxes or assessments until they were required by law or the express terms of their contract to pay the same. It is said in 1 Tiffany on Landlord and Tenant, page 855, section 143:

"The obligation of the lessee under his covenant is to pay the tax in time to avoid a sale of the lessor's property for nonpayment, or the enforcement of personal liability for the tax against the lessor, and before any penalty or interest becomes due by reason of delay in payment."

In the absence of a covenant on the part of a lessee to pay taxes or assessments at a specified time, there is no legal obligation to pay them until the last day upon which the law requires them to be paid so as to save interest, penalties or personal liability of the lessor. (*Trask* v. *Graham,* 47 Minn. 571 [50 N. W. 917]; *Minneapolis, St. P. & S. S. M. Ry. Co.* v. *Linnell,* 155 Minn. 103 [192 N. W. 365]; *Haynes* v. *Wisner,* 129 Wash. 92 [224 Pac. 592]; *Willett* v. *Kesselring,* 78 Okl. 199 [189 Pac. 752].) In the Trask case, *supra,* which was a suit between a lessee of property and his assignee thereof, for installments of rent and taxes paid under the terms of the lease, it was held there was no default for failure to pay taxes before they became delinquent. The court says in that regard:

"The covenant to pay was general, and would be satisfied if paid within the year and so as to save the lessor harmless. The lessees would not be in default, at least till the taxes became delinquent, which would not be till June 1st. There had been no breach of the covenant to pay the taxes, and the assignee took the leasehold estate *cum onere* as to them also. The plaintiff, as assignee, was liable directly to the lessor upon the covenant to pay the taxes. There had been no previous breach of the covenant, and the plaintiff, as assignee, took the place of the lessee in respect to lia-

bility upon covenants not yet matured. . . . Granting, then, that the lien of the taxes attached to the land January 1st, the obligations to pay them under the lease had not yet matured, and there is no covenant against encumbrances or liens on the land.''

In the Willett case, *supra,* which was an action for unlawful detainer based upon an alleged breach of covenant for the nonpayment of ''all taxes and assessments that shall be levied upon said premises during the term'', it was held the default did not occur until the payment of taxes became delinquent. In that case the taxes had been levied and became a lien on the property, but they were not delinquent at the time the suit was commenced. The court said in that regard:

''It was that interim of time between the date taxes were due and the time penalty for failure to pay attached that this suit was commenced. The agreement fixed no exact date or time upon which the taxes were to be paid. In the absence of an agreement fixing the time for an act to be done the law presumes that the act will be done in a reasonable time. . . . Until penalty attached, Kesselring could not be prejudiced by failure to pay the taxes; but after default is made in the payment of same, and penalty attaches thereto, he may be prejudiced thereby. We believe, and so find, that the trial court committed error in holding that as a matter of law that it was the duty of Mrs. Willett to pay the taxes when the same became due.''

In the Minneapolis, St. Paul Railway case, *supra,* the court quoted approvingly from *Wills* v. *Summers,* 45 Minn. 90 [47 N. W. 463], as follows:

''It was held under the terms of a lease reading substantially as the one herein as to the payment of taxes: 'That the covenant to pay the taxes would be satisfied by the payment thereof *at any time before they became delinquent.*' ''

The same principle was announced in the case of *Ricou* v. *Hart,* 47 La. Ann. 1370 [17 So. 878].

The term ''default'' is defined as the failure to perform a duty or an obligation required by law or by contract. The contract in this case did not require the payment of taxes or assessments at any specified time. We must then assume the parties to the lease intended to pro-

vide they should be paid when the law required that act to be performed. The lessees therefore were not in default so long as the law authorized the payment of taxes and assessments without the imposition of additional burdens of penalties, interest or delinquency.

█ We are satisfied the term "default" as it is used in the lease which is involved in this case means that the lessees were authorized to assign that instrument upon the written acceptance of the terms and obligations thereof by the assignee when all payments of rent, taxes and assessments which could then be legally enforced had first been paid by the lessees. The assignee did accept in writing the terms and obligations of the lease and is liable to the owners for the payment of the same. It may not be assumed the assignee is irresponsible. If he is, it was the misfortune of the lessors that they failed to provide against such a contingency. The irresponsibility of the assignee was not an issue in this case. Fraud in the making of the assignment was neither charged nor proved.

The judgment is reversed and the court is directed to render judgment for the defendants.

Plummer, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 13, 1934, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 13, 1934.